OPINION
SUTTON, Circuit Judge.
The Fourth Amendment provides in part that “no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or *436 things to be seized.” In this case, several agents of the United States Bureau of Alcohol, Tobacco and Firearms (BATF) obtained a search warrant that satisfied the particularity requirements of the Fourth Amendment at the time the magistrate issued the warrant. But by the time the agents conducted the search, a supporting affidavit that was cross-referenced in the warrant and that particularly described the things to be seized had been placed under seal and thus was not present during the search.
In this money-damages action filed against the agents under Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Keith Baranski and Pars International Corporation contend that the agents’ search of a warehouse owned by Pars and seizure of weapons owned by Baranski violated their Fourth Amendment rights. Because the warrant described the items to be seized when the magistrate “issue[d]” it, the warrant satisfied the particularity requirements of the Fourth Amendment. And because the agents conducted the search in a reasonable manner, they did not otherwise violate the Fourth Amendment. We therefore affirm the judgment of the district court in favor of the agents.
I.
In September 1999, Keith Baranski, a licensed firearms dealer, began importing machine guns from Eastern European countries. United States v. Baranski, 75 Fed.Appx. 566, 567 (8th Cir.2003). He imported the guns through a bonded customs warehouse owned by Pars and located in Louisville, Kentucky, where federal law required Baranski to keep the guns until he could sell them to eligible law enforcement departments.
Instead of selling the guns to eligible buyers, however, Baranski obtained forged letters of interest from a police chief located in Farber, Missouri, so that he could remove the weapons from the warehouse and could sell them illegally. BATF agent Michael Johnson uncovered the scheme when he found documents in a Missouri gun dealer’s shop that linked Baranski to the dealer and when he learned that one of Baranski’s letters of interest was forged, id. at 567.
On April 10, 2001, Johnson applied for a search warrant from a magistrate judge in Louisville, Kentucky, to allow him to search for and seize “about 425” weapons still being held by Baranski at the Pars warehouse. JA 120. As part of the warrant application, Johnson prepared an affidavit explaining Baranski’s scheme, detailing the probable cause for the search, identifying the bonded section of the warehouse as the place to be searched and identifying the machine guns as the items to be seized. In the location on the search warrant for describing the things to be seized, the warrant did not separately list those items but said “See Attached Affidavit,” which described the things to be seized. JA 91..
That same day, the magistrate judge approved the warrant. In doing so, he separately signed both the search warrant and the attached affidavit, then sealed the affidavit to protect the BATF’s confidential sources. D. Ct. Op. at 2.
On April 11, 2001, Johnson led approximately 20 BATF agents to the Pars warehouse to execute the warrant. Upon reaching the warehouse, the agents were met by Saeid Shafizadeh, an attorney for Pars, who asked to see the warrant. After reading the warrant, Shafizadeh asked to see the affidavit, at which point the officers told him that it was under seal. One agent then told Shafizadeh that they were looking for firearms owned by Baranski (or by *437 his company, Magua Industries) located in the bonded section of the warehouse. Shafizadeh complained that the search was illegal because the warrant itself failed to describe with particularity what the agents could seize, but nonetheless cooperated with the agents. At Shafizadeh’s direction, several United States Customs agents, who had recently inventoried the warehouse, escorted the agents to the basement of the building where the bonded warehouse was located. Once in the bonded warehouse, the agents seized 372 machine guns and 12 crates of firearm accessories belonging to Baranski. Id. Upon leaving the warehouse, the agents left an inventory of the seized items, id., and a copy of the search warrant with Shafizadeh, id.
On July 5, 2001, Baranski and Pars filed this money-damages action in the United States District Court for the Western District of Kentucky. As pertinent here, they (1) brought a Bivens claim against Johnson and several named and unnamed agents, contending that the agents had violated their Fourth Amendment rights and (2) separately moved to unseal the affidavit referenced in the search warrant. On March 22, 2002, the district court denied plaintiffs’ motion to unseal the affidavit and stayed the Bivens action pending the completion of the criminal investigation of Baranski.
On July 3, 2002, a grand jury based in the Eastern District of Missouri indicted Baranski for making “a false entry on any application, return, or record required by [the firearm importation laws], knowing such entry to be false.” 26 U.S.C. § 5861(1). The indictment also sought criminal forfeiture of the guns and accessories seized in the April 11 search. Baran-ski moved to suppress the machine guns and accessories on Fourth Amendment grounds. The district court denied the motion. United States v. Baranski, No. 4:02-CR-361, slip op. at *4-5 (E.D.Mo. Nov. 1, 2002). On November 18, 2002, a jury found Baranski guilty of violating § 5861(1), and the court sentenced him to 60 months in prison. Baranski, 75 Fed. Appx. at 568. Three months later, on February 27, 2003, the district court required Baranski to forfeit the weapons and accessories.
The Eighth Circuit affirmed. As to the suppression ruling, the court concluded that probable cause supported the warrant and that “[t]he warrant should not have been suppressed for lack of particularity. Although the warrant did not set out the property to be seized, the warrant referred to a sealed affidavit that described the weapons.” Baranski, 75 Fed.Appx. at 568. Any error in denying the motion to suppress, the court added, was harmless in view of the other evidence admitted against Baranski. Id. The court also upheld Baranski’s conviction and sentence as well as the forfeiture of his property. Id. at 569.
After Baranski’s conviction, the United States District Court for the Western District of Kentucky lifted the stay on Baran-ski’s Bivens claim and unsealed agent Johnson’s affidavit. On March 14, 2003, the district court granted the agents’ claim of qualified immunity, holding that the search did not violate the Fourth Amendment and, alternatively, that the search did not violate clearly established Fourth Amendment law. D. Ct. Op. at 5-6.
On March 14, 2005, a panel of this court reversed the district court’s grant of qualified immunity. Relying on the Supreme Court’s intervening decision in Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), the panel concluded that the warrant was facially deficient because the affidavit referenced in the warrant and describing the items to be seized *438 was under seal and was not attached to the warrant when the search was conducted. Baranski v. Fifteen Unknown Agents, 401 F.3d 419, 429 (6th Cir.2005). In the absence of the affidavit, the panel concluded that the search was a warrantless one, that no exigent circumstances justified a war-rantless search and that the agents had violated the claimants’ clearly established rights. Id. at 432-33. On August 5, 2005, the full court vacated the panel’s decision and granted rehearing en banc.
II.
In Bivens, the Supreme Court held that individuals could “recover money damages for any injuries [they have] suffered as a result of [a federal agent’s] violation of the [Constitution].” 403 U.S. at 397, 91 S.Ct. 1999. As with § 1983 actions against state and local officials, the Court has held that a claimant seeking relief under Bivens must overcome the federal official’s qualified immunity. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). To overcome that immunity, claimants must show (1) that the agents violated their constitutional rights and (2) that the constitutional right at issue is “sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Id. at 202, 121 S.Ct. 2151 (quotations omitted); see Flaskamp v. Dearborn Pub. Schs., 385 F.3d 935, 940-41 (6th Cir.2004).
A.
The Fourth Amendment says:
[1] The right of the people to be secure in them persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and
[2] no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const, amend. IV. The first clause of the Amendment, the Reasonableness Clause, provides an overriding check on criminal investigations by the government, prohibiting all “unreasonable searches and seizures.” See Soldal v. Cook County, 506 U.S. 56, 63, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931). The second clause, the Warrant Clause, explains the process for obtaining a warrant to authorize a search. See Maryland v. Garrison, 480 U.S. 79, 84-85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The two clauses do not stand alone. A search that satisfies the Warrant Clause will generally, but not invariably, satisfy the Reasonableness Clause. See Richards v. Wisconsin, 520 U.S. 385, 395, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (noting that despite the issuance of a warrant, “the reasonableness of the officers’ decision ... must be evaluated as of the time [of the search]”). And a search of a residence or building without a warrant is “presumptively unreasonable,” Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), but will not invariably violate the Reasonableness Clause. See id. at 587, 100 S.Ct. 1371 (“exigent circumstances” or consent may excuse the necessity of a warrant); Nat’l Treasury Employees Union v. Von Raab, 489 U.S. 656, 665, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (“[N]either a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance.”). This case raises several questions about the two clauses and their relationship to each other.
First: were the agents required to obtain a warrant before conducting this *439 search? The parties agree, as do we, that the Warrant Clause applies to this search and that neither the exigent-circumstances exception, consent nor any other exception to the clause excused the officers from having to obtain a warrant before conducting this search. See Marshall v. Barlow’s, Inc., 436 U.S. 307, 311, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (“The Warrant Clause of the Fourth Amendment protects commercial buildings as well as private homes.”).
Second: when the magistrate approved this warrant, did it comply with the Warrant Clause even though the warrant itself did not describe with particularity the items to be seized but expressly incorporated an affidavit that did describe them? The parties do not dispute that: (1) the application for a warrant supplied by agent Johnson established “probable cause” that a crime had been committed and that evidence of that crime likely would be found at the place to be searched, U.S. Const, amend. IV; (2) agent Johnson “supported” the warrant application by “Oath or affirmation,” id.; (3) the warrant “particularly describ[ed] the place to be searched” — namely, the Pars Warehouse, id.; and (4) “a neutral judicial officer”— here, a magistrate — legitimately approved the warrant, Steagald v. United States, 451 U.S. 204, 212, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).
Nor have the claimants shown that the agents failed to comply with the last requirement of the Warrant Clause — that the search warrant approved by the magistrate “particularly describ[e] ... the persons or things to be seized.” U.S. Const, amend IV. The officers presented two documents to the magistrate: a one-page “Search Warrant” and a ten-page “Application and Affidavit for Search Warrant.” JA 115, 116. The one-page “Search Warrant” was a form document filled out by agent Johnson that contained blank spaces for the magistrate (1) to approve and sign the warrant, (2) to state the date and time when the magistrate approved the warrant and (3) to limit the time within which the agents had authority to execute the warrant. JA 115. At the location on the form for identifying the items to be seized, agent Johnson referred to an attached affidavit (“See Attached Affidavit”), which identified the items that the agents sought permission to seize. Id. On appeal, no one disputes that the affidavit specifically described the items that the agents sought to find and seize. And no one disputes that agent Johnson presented both the warrant and the affidavit to the magistrate, as he independently signed each of them.
No doubt, “[t]he fact that the application adequately described the ‘things to be seized’ does not save the warrant” from the risk of facial invalidity because “[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents.” Groh, 540 U.S. at 557, 124 S.Ct. 1284. But, as Groh explained, “We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents.” Id. And “[ijndeed,” as Groh further recognized, “most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.” Id. at 557-58, 124 S.Ct. 1284.
What doomed the warrant in Groh was not the existence of a supporting affidavit that particularly described the items to be seized, but the failure of the warrant to cross-reference the affidavit at all. “Although the application particularly described the place to be searched and the contraband petitioner expected to find, the warrant itself was less specific; it failed to *440 identify any of the items that petitioner intended to seize.” Id. at 554, 124 S.Ct. 1284. Rather, “[i]n the portion of the form that called for a description of the ‘person or property’ to be seized, petitioner typed a description of respondents’ two-story blue house rather than the alleged stockpile of firearms.” Id. And “[t]he warrant did not incorporate by reference the itemized list contained in the application.” Id. at 554-55, 124 S.Ct. 1284. Because the warrant at the time of issuance did not describe with particularity the items to be seized but instead referred to a “single dwelling residence two story in height which is blue in color” as the “concealed ... property” to be seized, id. at 554, 124 S.Ct. 1284 n. 2, the warrant on its face failed to comply with the Warrant Clause. See Wayne R. LaFave, Search and Seizure § 4.6(a), at 619 (4th ed.2004) (noting that Groh “covers ... only” the situation where the warrant “ ‘did not describe the items to be seized at all’ ”) (quoting Groh, 540 U.S. at 558, 124 S.Ct. 1284).
No equivalent problem occurred here. This warrant explicitly incorporated the supporting affidavit; the magistrate signed the affidavit and warrant; and the affidavit described with particularity the items to be seized. Rather than generally (and unintelligibly) authorizing the seizure of a two-story blue house, Groh, 540 U.S. at 554, 124 S.Ct. 1284, this warrant authorized the seizure of 425 machine guns. Rather than leaving reviewing courts in doubt “whether the Magistrate was aware of the scope of the search he was authorizing,” id. at 561, 124 S.Ct. 1284 n. 4, this warrant made it clear that the magistrate understood and cabined the scope of the search he was authorizing. And rather than leaving reviewing courts in doubt whether the magistrate provided “written assurance that [he] actually found probable cause to search for, and to seize, every item mentioned in the affidavit,” id. at 560, 124 S.Ct. 1284, this warrant and affidavit (and the magistrate’s signature on both of them) made it clear that the magistrate found that there was probable cause to support the search.
Consistent with Groh, all of the courts of appeals (save the Federal Circuit) have permitted warrants to cross-reference supporting affidavits and to satisfy the particularity requirement through an incorporated and attached document — at least when it comes to the validity of the warrant at the time of issuance. See United States v. Riccardi, 405 F.3d 852, 863 n. 1 (10th Cir.2005); United States v. Miggins, 302 F.3d 384, 395 (6th Cir.2002); United States v. Beaumont, 972 F.2d 553, 561 (5th Cir.1992); United States v. Jones, 54 F.3d 1285, 1290 (7th Cir.1995); United States v. Bianco, 998 F.2d 1112, 1116-17 (2d Cir.1993); United States v. Towne, 997 F.2d 537, 544 (9th Cir.1993); United States v. Washington, 852 F.2d 803, 805 (4th Cir.1988); United States v. Vaughn, 830 F.2d 1185, 1186 (D.C.Cir.1987); United States v. Johnson, 690 F.2d 60, 64 (3d Cir.1982); United States v. Wuagneux, 683 F.2d 1343, 1351 n. 6 (11th Cir.1982); United States v. Klein, 565 F.2d 183, 186 n. 3 (1st Cir.1977); United States v. Johnson, 541 F.2d 1311, 1315 (8th Cir.1976). We stand by this view today.
Third: even if the warrant satisfied the Warrant Clause at the time of issuance, did the ensuing search become warrantless, and therefore “presumptively unreasonable,” Payton, 445 U.S. at 586, 100 S.Ct. 1371, due to the manner in which the agents conducted the search? We think not.
The Warrant Clause contains four textual requirements, each of which places restrictions on the issuance of a warrant. “[N]o Warrants shall issue,” it says, “but upon [1] probable cause, [2] supported by *441 Oath or affirmation, and [3] particularly describing the place to be searched, and [4] the persons or things to be seized.” U.S. Const, amend. IV (emphasis added). By their terms, each of these requirements must be satisfied upon the “issu[ance]” of the warrant, and nothing about the text of the clause suggests that a warrant valid upon issuance may become invalid upon execution when the scope and timing of the search is conducted in accordance with the terms of the warrant.
Nor do the historical purposes of the clause suggest otherwise. The chief purpose of the particularity requirement was to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed. See Stanford v. Texas, 379 U.S. 476, 481, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) (outlining the history of “officers acting under the unbridled authority of a general warrant” and noting the need for independent approval of warrants by magistrates); see also Muehler v. Mena, 544 U.S. 93, 125 S.Ct. 1465, 1469, 161 L.Ed.2d 299 (2005) (“[T]he presence of a warrant assures that a neutral magistrate has determined that probable cause exists .... ”); Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927) (“The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.”).
The “purpose of the particularity requirement,” it is true, is not confined to the “prevention of general searches.” Groh, 540 U.S. at 561, 124 S.Ct. 1284. “A particular warrant also ‘assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.’ ” Id. (quoting United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)). When the magistrate approved this warrant, however, it contained these assurances, as it restricted the items to be seized to weapons owned by Baranski. Cf. United States v. Grubbs, — U.S. -, -, 126 S.Ct. 1494, 1501, 164 L.Ed.2d 195 (2006) (noting that “ ‘the requirement of particular description does not protect an interest in monitoring searches’ ”) (quoting United States v. Stefonek, 179 F.3d 1030, 1034 (7th Cir.1999)).
Consistent with the language of the Warrant Clause and the historical purposes behind it, a search conducted in accordance with a valid warrant does not become warrantless, and therefore “presumptively unreasonable,” due to the manner in which the officers conducted the search. As the Court has “[r]ecogniz[ed],” “the specificity required by the [Warrant Clause of the] Fourth Amendment does not generally extend to the means by which warrants are executed.” Dalia v. United States, 441 U.S. 238, 257, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979); see Grubbs, 126 S.Ct. at 1500-01 (noting that the “words of the Fourth Amendment” do not “ ‘suggest[ ] that, in addition to the [requirements set forth in the text], search warrants also must include a specification of the precise manner in which they are to be executed’ ”) (quoting Dalia, 441 U.S. at 255, 99 S.Ct. 1682) (brackets supplied by Grubbs); see also United States v. Basham, 268 F.3d 1199, 1204 (10th Cir.2001) (“[T]he question of whether the warrant itself is valid” “is an entirely different matter” from the more general Fourth Amendment reasonableness inquiry) (internal quotation marks omitted).
In contending that the agents conducted a warrantless search in this instance, Bar-anski and Pars target three alleged short *442 comings: the agents did not hand Pars’ attorney a copy of the affidavit when he asked for it at the outset of the search; the agents did not bring the affidavit with them when they conducted the search; and the agents did not leave a copy of the affidavit with the warrant after the search. Groh, they claim, supports all three requirements and, most importantly, makes a search that fails to comply with them a warrantless, and thus “presumptively unreasonable,” search. We do not agree.
The warrant in Groh, as shown, did not satisfy the particularity requirements of the Warrant Clause because it did not incorporate the affidavit that accurately described the items to be seized. Without something on the face of the warrant indicating the particulars of the items to be seized or incorporating a document that described those particulars, the Court reasoned that it could not “know whether the Magistrate was aware of the scope of the search he was authorizing.” Groh, 540 U.S. at 561 n. 4, 124 S.Ct. 1284. Because the warrant “did not describe the items to be seized at all,” the Court concluded that “the warrant was so obviously deficient that we must regard the search as ‘war-rantless’ within the meaning of our case law.” Id. at 558, 124 S.Ct. 1284. No such problem infected this warrant.
Baranski and Pars persist that Groh is more than just a case about satisfying the Warrant Clause at the time of issuance through an incorporated affidavit. As they read the decision, it establishes an incorporate-and-produce and an incorporate-and-accompany requirement with respect to supporting affidavits: Not only must the warrant expressly incorporate the attached affidavit, which happened here, but the affidavit also (1) must be given to an occupant who requests it at the outset of the search, (2) must accompany the agents during the search and (3) must be left at the scene of the search — all three of which did not happen here.
Groh, as an initial answer, provides scant support for holding that the failure to produce a warrant at the outset of a search makes the search a warrantless one. The Court acknowledged that the Fourth Amendment does not compel officers to present a warrant before a search. Id. at 562, 124 S.Ct. 1284 n. 5 (“[Neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search.”). And the Court disclaimed resolving whether officers must produce a warrant, to say nothing of a supporting affidavit, when the occupant requests it at the outset of the search. See id. (“Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers’ safe and effective performance of their mission, is a question that this case does not present.”). Even at that, the Court left open only the possibility that it would be “unreasonable” to decline such a request, not that the search would become warrantless if the agents declined such a request.
In the aftermath of the Court’s most recent decision in this area, United States v. Grubbs, — U.S.-, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006), the possibility that the Warrant Clause requires officers to produce a copy of the warrant (and any affidavit) at the outset of the search seems even less plausible. One question presented by Grubbs was whether officers must list the “triggering condition” in an anticipatory warrant in order to permit the owner of the property to “polie[e] the officers’ conduct.” 126 S.Ct. at 1501 (quotation omitted). In rejecting that argument, the Court reasoned that “[t]his argument as *443 sumes that the executing officer must present the property owner with a copy of the warrant before conducting his search.” Id. Yet there is no such requirement, the Court observed, and “ ‘[t]he absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is ... evidence that the requirement of particular description does not protect an interest in monitoring searches.’ ” Id. (ellipses supplied by Grubbs) (quoting Stefonek, 179 F.3d at 1034).
 Nor, at any rate, would such a rigid rule lend itself to sensible application. Aside from the oddity of having the constitutionality of a search turn on the serendipity of whether the occupants happen to be present when the officers arrive, there doubtless will be times when officers could not reasonably be expected to comply with such a requirement. In carrying out a search, officers need not cooperate with uncooperative property owners or those who threaten to put the search at risk. See Wilson v. Arkansas, 514 U.S. 927, 936, 115 S.Ct. 1914,131 L.Ed.2d 976 (1995); see also United States v. Banks, 540 U.S. 31, 38, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003). While the decision of officers not to present an incorporated affidavit to the occupant upon request may be a relevant factor in determining the reasonableness of a search, it does not make a warrant-supported search a warrantless one.
Groh contains some language in support of plaintiffs’ second argument — that an incorporated affidavit must accompany the warrant at the time of the search. See 540 U.S. at 558, 124 S.Ct. 1284 (“But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant.”); id. at 560, 124 S.Ct. 1284 (“But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search), there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.”).
Read in context, however, these passages do not establish the bright-line rule that Baranski and Pars advocate. As we have shown, Groh turns on the facial invalidity of the warrant, not the manner in which the officers conducted the search. Any doubt about the holding of Groh is removed when one reads the second part of the decision. There, in determining whether the officers had violated the claimants’ clearly established constitutional rights, the Court indicated that the constitutional violation at issue was the facial insufficiency of the warrant, not the failure to incorporate the affidavit and bring it during the search. See id. at 563, 124 S.Ct. 1284 (“Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid.”); id. at 564, 124 S.Ct. 1284 (“[E]ven a cursory reading of the warrant in this case— perhaps just a simple glance — would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal.”); id. (“[Ajbsent consent or exigency, a warrantless search of the home is presumptively unconstitutional.”).
What, then, should a lower court make of Groh’s reference to an incorporated affidavit being “present” at the search? One possibility is that the Court’s reference to the absence of incorporation and to the absence of an accompanying affidavit was necessary to resolve the facial-invalidity problem at hand. In other words, the reasoning of Groh (though perhaps not the *444 result) might well have been different if the facially defective warrant had been attached to an affidavit signed by the magistrate that clearly corrected the omission and that accompanied the warrant during the search. The reference to the absence of any attached affidavit thus ensured that the Court was not directly resolving that issue.
Another possibility is that the Court was suggesting that officers generally should bring an incorporated affidavit (or an authenticated summary of the items to be seized) with them during the search and that the failure to do so may be a factor in determining whether the search was reasonable, two points with which we agree. If, say, a search involved otherwise fungible property that contained discrete identifying markers {e.g., currency identified by serial number) and if only an incorporated affidavit described those markers, the absence of the affidavit on the scene could render the search unreasonable. Of. Jones, 54 F.3d at 1292. But that does not establish that the absence of an incorporated affidavit during a search makes the search a presumptively unreasonable one in all settings, no matter whether the property owner was there, no matter how readily identifiable the subject of the search. The salient point is that Grok, did not establish a one-size-fits-all requirement that affidavits must accompany all searches to prevent a lawfully authorized search from becoming a warrantless one.
Neither can we accept plaintiffs’ last contention — that the Constitution demands that agents leave incorporated affidavits (or authenticated summaries of them) at the scene of the search on pain of the search being treated as warrantless. In some settings, such an unyielding requirement would make little sense. How, for example, would officers execute a warrant for a wiretap? The Constitution does not require officers to leave a copy of the warrant next to every phone upon which a bug has been placed or next to every phone that has been wiretapped. See Dalia, 441 U.S. at 248, 99 S.Ct. 1682 (holding that the Fourth Amendment does not require notice of the execution of warrants that depend on covert action to be successful). At the same time that Grok acknowledged this reality, see 540 U.S. at 562, 124 S.Ct. 1284 n. 5, it never said that the failure to leave an incorporated affidavit (or authenticated summary) at the scene of the search renders the search presumptively unreasonable.
Rule 41(f) of the Federal Rules of Criminal Procedure also fails to supply any traction for this argument. See Fed. R.Crim.P. 41(f)(3)(A) (indicating that an officer must “give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken”). For one, the warrant and inventory were left with Shafizadeh after the search, and plaintiffs have not identified any case law establishing that the failure to leave a sealed affidavit with the warrant violates Rule 41(f). For another, even a violation of the Federal Rules by itself would not establish a constitutional violation, which is what plaintiffs must establish in order to obtain money damages in this Bivens action. See Bivens, 403 U.S. at 397, 91 S.Ct. 1999.
In the end, Grok does not alter the traditional assumption “that the specificity required by the [Warrant Clause of the] Fourth Amendment does not generally extend to the means by which warrants are executed.” Dalia, 441 U.S. at 257, 99 S.Ct. 1682. In contrast to presumptively fatal failures to comply with the Warrant Clause’s particularity requirement, the question here is whether the agents acted reasonably in conducting the search under the totality of the circumstances. The lat *445 ter inquiry does not submit to an across-the-board requirement, and we see no indication in Groh or in any other decision that the Court meant to establish one. To say that a warrant satisfies the Warrant Clause upon issuance, however, by no means establishes that a search satisfies the Reasonableness Clause upon execution, which prompts the last question presented.
Fourth: even if the agents satisfied the Warrant Clause, did they nonetheless violate the Reasonableness Clause when they conducted the search? We conclude that they did not.
When a search requires a warrant, the failure to satisfy the Warrant Clause makes the search “presumptively,” if not per se, “unreasonable.” Payton, 445 U.S. at 586, 100 S.Ct. 1371; see Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The opposite, however, is neither presumptively nor absolutely true. Even when officers have complied with the Warrant Clause in obtaining authorization for a search, that does not insulate the search from challenge. While a warrant may circumscribe an officer’s authority, that does not mean the officer adhered to that limitation and does not mean that what started as a particularized search did not become a general one. To satisfy the Reasonableness Clause, officers not only must obtain a valid warrant but they also must conduct the search in a reasonable manner. See Dalia, 441 U.S. at 257, 99 S.Ct. 1682 (“[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant— subject of course to the general Fourth Amendment protection ‘against unreasonable searches and seizures.’ ”) (footnote omitted). “The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant.” United States v. Ramirez, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (citation omitted).
Illustrating the point: in establishing that officers generally must alert homeowners to their presence before executing a search warrant, the Court has noted that “an officer’s unannounced entry into a home might be unreasonable under the Fourth Amendment” even though the search was supported by a valid search warrant. Wilson, 514 U.S. at 934, 115 S.Ct. 1914; see Banks, 540 U.S. at 36, 124 S.Ct. 521 (same); Richards, 520 U.S. at 387, 117 S.Ct. 1416 (same). This limitation on the execution of a valid search warrant extends beyond the setting of the Court’s knock-and-announce rulings, and we see no reason why it would not extend here. See Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (holding that where a judge accompanies police officers on a search to broaden the scope of the warrant as the search progresses, the search is unreasonable despite an initially valid warrant); see also United States v. Tucker, 313 F.3d 1259, 1265 (10th Cir.2002) (noting that under certain circumstances a nighttime search may be unreasonable despite the issuance of a valid warrant).
In answering the fundamental inquiry of whether this search was reasonable, we of course look at “the totality of the circumstances.” Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). When agent Johnson and the other agents arrived at the scene, they had a valid search warrant, which they gave to Shafi-zadeh upon arriving at the warehouse and upon asking to enter it. The face of the warrant showed that an independent judicial officer had approved the search of the bonded section of the warehouse. When Shafizadeh asked to see a copy of the incorporated affidavit, agent Johnson, who *446 wrote and signed the affidavit, explained that it was under seal but then proceeded to tell him orally what the warrant and affidavit authorized them to seize, namely 425 machine guns owned by Baranski and located in the customs bonded portion of the warehouse. Cf. Groh, 540 U.S. at 563, 124 S.Ct. 1284 (reasoning that the officers orally explained to the property owner only that they were looking for “ ‘an explosive device in a box,’ ” which was “little better than no guidance at all”); id. at 562, 124 S.Ct. 1284 (declining to resolve whether the presence of the affiant to explain the scope of the search may provide “all of the notice that a proper warrant would have accorded”).
There was nothing unduly complex about the object of the search that would have prevented agent Johnson from remembering precisely what he had authority to search for and to seize. Cf. Jones, 54 F.3d at 1292; United States v. Stefonek, 179 F.3d 1030, 1034-35 (7th Cir.1999) (noting that the warrant may prove a useful tool to the executing officers in ensuring that their search remained within the scope approved by the magistrate and concluding that these considerations were useful for determining the reasonableness of a search but did not make them constitutionally required). And no suggestion has been raised that producing the affidavit was necessary to defuse a potential “breach[] of the peace.” Stefonek, 179 F.3d at 1035.
The record also shows that once Shafiza-deh agreed to let the agents into the warehouse, the agents conducted the search in a reasonable manner. The day before the search, agent Johnson met with the other agents and laid out a plan for executing the warrant, which included a description of the guns to be seized, a map of the warehouse, the specific location within the warehouse where the guns would be seized, the identity of Shafizadeh as the appropriate warehouse contact and other information relevant to the search. On the day of the search, agent Johnson helped to direct the officers in seizing Baranski’s machine guns. See United States v. Dale, 991 F.2d 819, 848 (D.C.Cir.1993) (noting that the presence of the agent “who prepared the affidavit and obtained the warrant” to “over[see] the warrant’s execution and guide[ ] the participating agents” “sufficiently limited the discretion of the executing agents”).
The agents seized no more than was authorized by the warrant — Baranski’s machine guns and associated crates of accessories — and searched no more of the warehouse than was necessary to seize these weapons. When the search was complete, the agents left a copy of the warrant and a complete inventory of items seized, both of which provided Baranski and Pars all of the information they needed to attempt to unseal or partly unseal the affidavit. By all accounts, the agents conducted the search consistently with the constitutional guidelines set out in Supreme Court precedent and made efforts both to circumscribe their search to the approved scope of the warrant and to diminish the likelihood of conflict at the scene. Cf. Frisby v. United States, 79 F.3d 29, 32 (6th Cir.1996) (“Here, plaintiff was not prejudiced by the agents’ failure to furnish him with Attachment A prior to the search. Agents conducted the search in accordance with the warrant and seized only those items enumerated in Attachment A. Further, agents provided plaintiff with an inventory of seized property prior to leaving his premises and subsequently provided him with a copy of Attachment A. Finally, plaintiffs legal remedies were in no way affected by the unintentional failure to serve him with a copy of Attachment A prior to the search.”); Dale, 991 F.2d at 848 (per curiam, including then- *447 Judge Ruth Bader Ginsburg) (“Agent Shintani, who prepared the affidavit and obtained the warrant, was present at the search, oversaw the warrant’s execution and guided the participating agents in seizing documents to conform the search to her understanding of the warrant’s requirements. While it is not altogether clear that the affidavit accompanied the warrant at the search, we are satisfied that the precautions taken by the government sufficiently limited the discretion of the executing agents.”).
Although it is true that the agents did not supply a written document explaining what they were authorized to seize, they orally told the owner’s agent what they had permission to seize and left him with ample information to obtain the affidavit or an authenticated summary of it. Indeed, while Baranski and Pars filed a motion to unseal the affidavit on July 5, 2001, which was eventually granted, they never sought in the interim to obtain an authenticated summary of the affidavit itemizing the property that could be seized — undermining any claim that they were prejudiced by the method of the agents’ search.
This approach, moreover, is consistent with our own decisions. See Frisby, 79 F.3d at 31-32 (concluding that where the affiant is at the scene, the warrant is validly approved and the search is confined to the approved corners of the warrant, the search is valid despite the absence of the affidavit); United States v. Gahagan, 865 F.2d 1490, 1497 (6th Cir.1989) (concluding that where the warrant is valid, the search is conducted in accordance with the warrant and the affiant is there to answer questions and direct his fellow officers, the search is valid despite the absence of the affidavit); cf. Dale, 991 F.2d at 847-48 (concluding that the availability of the affi-ant at the scene of the search to answer the questions of both the property owners and the executing officers was sufficient to excuse the absence of the affidavit during the search).
Doubtless, the agents would have been wiser to bring a written summary of the items to be seized (presumably signed by the magistrate) or to list the items to be seized in the warrant itself. There seems to be little doubt (and none has been offered by the United States) that agents who choose to rely on an incorporated affidavit typically have good reason and ample means to avoid complaints like this one. But the question is whether the Fourth Amendment demands these things, even when the purposes of doing them have been satisfied and even when the failure to do them has not prejudiced the property owners. On this record and under these circumstances, we hold that no constitutional violation occurred.
B.
But even if that were not the case, even if the search violated the Fourth Amendment, it did not violate “clearly established” law. Saucier, 533 U.S. at 201, 121 S.Ct. 2151; see Brosseau v. Haugen, 543 U.S. 194, 199-201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (holding that qualified immunity is appropriate unless either a precedent “squarely governs” the outcome of the case or the case is so “obvious” that “general tests .... ‘clearly establish’ the answer, even without a body of relevant ease law”). A right is “clearly established,” the Supreme Court has said, when it is no longer among the “hazy” area of constitutional issues that might be “reasonably misapprehend[ed]” by a law enforcement officer at the scene. Brosseau, 543 U.S. at 198,125 S.Ct. 596.
One indicator that this alleged Fourth Amendment right, at a minimum, remained in a “hazy” area of constitutional meaning that law enforcement agents *448 might “reasonably misapprehend” is the fact that the Eighth Circuit (on plaintiffs theory) apparently “misapprehend[ed]” this area in assessing a suppression motion arising from this precise search. In Bar-anski’s direct criminal appeal, a panel composed of Judges Melloy, R. Arnold and Fagg concluded in an unpublished per cu-riam opinion that “[t]he warrant should not have been suppressed for lack of particularity” under the Leon good-faith doctrine. United States v. Baranski, 75 Fed. Appx. 566, 568 (8th Cir.2003). When a sister court of appeals concludes on the exact facts presented to us that government agents acted in good faith in executing this warrant, it seems fair to say that the issue at a minimum involves a “hazy” area of constitutional law, one that we should be reluctant to tell agents they were delinquent in failing to appreciate. See Groh, 540 U.S. at 565 n. 8, 124 S.Ct. 1284 (noting that the Leon good-faith inquiry and the qualified-immunity inquiry are one and the “same.”).
Even aside from this mirror-image precedent from another circuit, the prevailing law in this circuit would have led reasonable agents to believe that their conduct was legal at the time they conducted the search. In Frisby v. United States, 79 F.3d 29 (6th Cir.1996), the government inadvertently failed, at the time of the search, to include an attached affidavit with the warrant that referenced it. Yet the agents provided an inventory, took only what they should have taken and subsequently provided the defendant with a copy of the attached affidavit. No Fourth Amendment violation occurred on these facts, we held. 79 F.3d at 32. In United States v. Gahagan, 865 F.2d 1490 (6th Cir.1989), we upheld a search where the warrant did not correctly describe the place to be searched but contained an incorporated affidavit that did describe the location. Id. at 1497. Even though the affidavit was left behind in the police ear during the search, rather than attached to the warrant, the court upheld the search. Id.
In an unpublished opinion decided after the search at issue in this case, we concluded that where the warrant referred the reader to “attachment B” in the description of things to be seized, but the police failed to bring the attachment with them at the time of the search, the search was still valid. See United States v. Pritchett, 40 Fed.Appx. 901, 907 (6th Cir. 2002). As here, the attachment had a sufficient description of the objects at issue but was not with the agents when they conducted their search. And, as here, the attachment was appended to the warrant application at the time of issuance and was subsequently placed under seal. The court held that because the affiant led the search, the agents orally communicated to the occupant what they were looking for before they performed their search and the agents provided him with a receipt afterwards, “[t]he Fourth Amendment’s requirements were satisfied.” Id.
In addition to our circuit and the Eighth Circuit, other appellate courts have rejected similar claims either because they did not state a constitutional violation or because they did not defeat a Leon good-faith defense. See Mazuz v. Maryland, 442 F.3d 217, 229 (4th Cir.2006) (holding that the fact that the officer “did not carry the warrant with him during the actual raid” was not unreasonable because “it is undisputed that [the officer] knew at all times that the warrant authorized him to enter room 5110”); United States v. Jones, 54 F.3d 1285, 1292 (7th Cir.1995) (holding that the fact that the affidavit was not at the scene of the search did not violate the Fourth Amendment because “the officer in charge of conducting the search ... had in his possession the serial numbers of the *449 currency listed in the affidavit, ... he limited the search to those items described in the warrant, and ... he made a return to the magistrate that conformed to the warrant and affidavit”) (internal quotation omitted); United States v. Dale, 991 F.2d 819, 848 (D.C.Cir.1993) (“While it is not altogether clear that the affidavit accompanied the warrant at the search, we are satisfied that the precautions taken by the government sufficiently limited the discretion of the executing agents,” including the precaution that the search “was executed by the affiant pursuant to a specific plan”); Colorado v. Staton, 924 P.2d 127, 132 (Colo.1996) (holding that even where an affidavit is necessary to establish the particularity of the warrant “the execution of the search warrant under the supervision and control of the officer who is the affiant obviates the necessity for the affidavit to accompany the warrant when it is executed”); cf. United States v. Stefonek, 179 F.3d 1030, 1033 (7th Cir.1999) (holding that where the affidavit describing the items to be seized was not with the officers at the time of the search, evidence should not be excluded under Leon because the search “conformed to the particular description in the affidavit of the things to be seized, .... [a]mong the agents who executed the search were the very agents who had prepared the application for the warrant ... [and] they knew the limited scope of the application----The search would thus have been identical in scope, and exactly the same evidence would have been seized, had the warrant complied with the Constitution, which is to say, had the warrant repeated the application’s description of the things to be seized”).
The Ninth Circuit, we recognize, has charted a different path. It has held that an affidavit necessary to satisfy the particularity requirement not only must be incorporated into the warrant but also must accompany the warrant at the scene. See, e.g., United States v. McGrew, 122 F.3d 847, 850 (9th Cir.1997). But this disagreement among the circuits at the time of the search, to say nothing of the weight of the authority in our circuit and elsewhere favoring the defendants’ assessment of these constitutional issues, shows that the agents did not violate clearly established law. Wilson v. Layne, 526 U.S. 603, 618, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (noting that when judges “disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy”).
Groh does not alter this conclusion. The Court could criticize that search as war-rantless because the warrant contained a “glaring deficiency” upon issuance recognizable by “any reasonable police officer,” 540 U.S. at 564, 124 S.Ct. 1284: Namely, in the section calling for “a description of the ‘person or property’ to be seized,” id. at 554, 124 S.Ct. 1284, the agent typed “single dwelling ... blue in color,” id. at 554, 124 S.Ct. 1284 n. 2. When the magistrate signed the warrant, this description was the only one regarding the items that could be seized. Id. Such a warrant, the Court concluded, was “facial[ly] invalid! ],” id. at 557,124 S.Ct. 1284, and because “the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid,” id. at 563, 124 S.Ct. 1284. Absent any evidence on the face of the warrant that it incorporated the attached affidavit, the Court concluded, the warrant was “manifestly invalid,” “warrantless” and thus “constitutionally fatal.” Id, at 564,124 S.Ct. 1284.
Today’s facts offer a poor analogy. At the time of issuance, this warrant specifically incorporated the affidavit (“See Attached Affidavit”), which in turn particularly described the items to be seized. *450 Far from invalidating incorporated affidavits, Groh recognized that they may satisfy the particularity requirement, and in this case no one disputes that the warrant upon issuance appropriately incorporated the affidavit and that the magistrate reviewed, approved and signed the warrant and affidavit. At the time of issuance, in marked contrast to Groh, no amount of study by the agents or the magistrate would have revealed a constitutional infirmity in the warrant.
Nor did Groh say that it was clearly established that a warrant valid upon issuance becomes invalid upon execution if the incorporated affidavit does not accompany the search. The words of the Constitution, to which the Court referred in concluding that the Groh warrant was facially invalid, establish particularity requirements that apply by their terms upon the “issu[ance]” of a warrant, not upon the execution of it. Whether a particularized warrant at the time of issuance may become an unparticu-larized warrant when a cross-referenced affidavit does not accompany the search remains a matter of continued debate among the circuits and remains an issue that neither the text of the Fourth Amendment nor Groh resolves. We thus conclude that even if this search had violated the Fourth Amendment right, it did not violate “clearly established” constitutional law, and accordingly the agents should receive qualified immunity.
III.
For these reasons, we affirm.