<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 16a0560n.06

Case No. 15-6419

| | |
|---|---|
| **UNITED STATES COURT OF APPEALS**<br>**FOR THE SIXTH CIRCUIT** | **FILED**<br>Oct 04, 2016<br>DEBORAH S. HUNT, Clerk |

UNITED STATES OF AMERICA, )
                                        )
      Plaintiff-Appellee, )
                                        )     ON APPEAL FROM THE UNITED
v. )     STATES DISTRICT COURT FOR
                                        )     THE EASTERN DISTRICT OF
AARON RAGLIN, )     KENTUCKY
                                        )
      Defendant-Appellant. )
                                        )
                                        )

BEFORE: SUTTON and STRANCH, Circuit Judges; and STEEH, District Judge.*

SUTTON, Circuit Judge. Two police detectives watched a drug deal take place in a parking lot, and followed one of the cars involved back to Aaron Raglin's house. After gathering more evidence linking Raglin to drug trafficking, the police obtained a search warrant for the house, where they found cocaine, cash, firearms, and equipment for packaging cocaine. Raglin moved to suppress that evidence as well as statements he made during the search. The district court denied the motion, and Raglin entered a conditional guilty plea to conspiracy to distribute cocaine. He appeals the denial of his suppression motion, arguing that the search warrant was not supported by probable cause, that it failed to describe the evidence sought with particularity, and that the good faith exception to the exclusionary rule should not apply. We affirm.

_____

*The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

In 2015, police officers followed Arnav Wheat, one of Raglin's co-defendants, as part of an ongoing drug trafficking investigation. Accompanied by a child, Wheat drove to a mall parking lot and left the child with a man in a black Cadillac. Wheat then drove to another part of the parking lot where he met with a man in a tan vehicle and appeared to exchange drugs for money. He then returned to the Cadillac to pick up the child.

After all of the suspects left the parking lot, the police pulled over the tan vehicle. They searched the car and found 900–1,000 prescription opioid pills. At the same time, another group of officers followed the black Cadillac to Raglin's house. The driver went inside for several minutes, then returned to the car. The officers pulled the car over and found $3,000 inside. The driver—Ricardo Edmonds, also a co-defendant—admitted to having been in the mall parking lot and identified Raglin as the resident of the house he had just left.

The officers returned to Raglin's house and tried to contact him. A neighbor told them that a purse had just appeared on the roof of Raglin's house. Markisha Haddix, who lived at the house with Raglin, told the officers that the purse was hers, and gave them permission to retrieve the purse and search it. The officers found $38,000 cash inside. This was the "going rate for a kilogram of cocaine," when added together with the $3,000 found in Edmonds' car. R. 156 at 18. Haddix also told the officers that there were firearms inside the house.

While the officers were still at the scene, Raglin exited the house. The officers stopped him and ran a criminal history search on him. They found two prior convictions for cocaine trafficking and one for a firearms violation.

Detective Kevin Duane filled out an affidavit to support a search warrant. He described the day's events, from observing Wheat in the parking lot to detaining Raglin outside his house.

2

The affidavit concluded that there was probable cause that Raglin's house contained evidence of drug trafficking. In editing the proposed search warrant, Duane inadvertently deleted the "boilerplate" language that describes the items typically sought during a drug trafficking search. The warrant, however, incorporated the affidavit, which was not blank on this score. It described what they were looking for: "evidence related to the illegal use/s[ale]/transfer of illegal narcotics." R. 59-2 at 4.

Several officers executed the search warrant. During the search of the house, they seized cocaine, $4,815 in cash, several loaded pistols, ammunition, a hydraulic metal press (commonly used to shape powder cocaine into bricks), two digital scales with cocaine residue, several large baggies, several cell phones, and documents that connected Raglin to the residence.

Raglin moved to suppress the evidence and some statements he made during the search. The district court denied his motion. Raglin conditionally pleaded guilty and filed this appeal.

II.

Raglin argues that the evidence acquired during the search of his home should be suppressed because: (1) the search warrant was not supported by probable cause, (2) the warrant failed to describe the items sought with particularity, and (3) the good-faith exception to the exclusionary rule should not apply. In reviewing the denial of a motion to suppress, we "must consider the evidence in the light most favorable to the government." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc).

*Probable Cause.* To justify a search, an officer must demonstrate "why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). There must be a connection between the location of the search and the subject of the search. Duane's affidavit established an adequate connection between

3

Raglin's home and the drug trafficking activity the police observed earlier that day. Start with the facts that a suspect drove to Raglin's house immediately after a suspected drug deal and a purse stuffed with $38,000 cash suddenly appeared on Raglin's roof. Add to that the twin realities that Raglin was a convicted drug dealer and that another resident of the home told police there were firearms inside, and there was plenty of evidence to justify searching Raglin's home.

Cases reaching a contrary conclusion involved far more tenuous evidence of illegal conduct than this affidavit provided. In *Carpenter*, the search warrant affidavit stated only that marijuana plants were growing "near" the residence and that a road connected the house to the plants. *Id.* at 595–96. We also found no probable cause when an affidavit stated only that police officers had found crack cocaine on a resident of the home during an arrest, *United States v. McPhearson*, 469 F.3d 518, 524–25 (6th Cir. 2006), and when all the evidence in the affidavit came from an informant whose reliability was not established, *United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009). *See also United States v. Brown*, No. 13-1761, 2016 WL 3584723, at *6 (6th Cir. June 27, 2016). Here, in marked contrast, direct evidence linked Raglin's home to an observed drug deal. That established probable cause to search Raglin's home for evidence of drug trafficking.

*Particularity.* The Fourth Amendment requires a search warrant to "particularly describe[] the place to be searched, and the . . . things to be seized." The chief concern of the requirement is to prevent "[g]eneral warrants," which "create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure." *United States v. Henson*, 848 F.3d 1374, 1382 (6th Cir. 1988) (quotation omitted). The chief answer to that concern is to "require[e] a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Baranski v. Fifteen*

*Unknown Agents of the Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 441 (6th Cir. 2006) (en banc).

The degree of specificity required in a search warrant varies depending on (1) "what information is reasonably available to the police," *United States v. Ford*, 184 F.3d 566, 575 (6th Cir. 1999), (2) "the crime involved," as well as (3) "the types of items sought," *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011). In the context of this warrant application, each of these factors indicates that the authorization to look for and seize "evidence related to the illegal use/s[ale]/transfer of illegal narcotics" satisfies the particularity requirement. R. 59-2 at 4.

First, consider the information available to the police. As shown, they had probable cause to suspect Raglin was trafficking in drugs. Purses stuffed with $38,000 cash, sad to say, do not materialize out of thin air. But they had little information about just what kind of operation he was running out of the home. The officers knew only that Raglin was involved in the trafficking ring and that he had been convicted of drug trafficking several times before. But they had no idea how or where he stored, prepared, and packaged the drugs he sold. Nor did they know how or where he kept records of drug transactions. All the officers had to go on was a well-substantiated suspicion that there was drug trafficking afoot in Raglin's home. In these circumstances, there was not much more Duane could have said than what he did say: that the officers were looking for evidence of drug trafficking.

That brings us to the second and third factors: the crime involved and the types of items sought. Drug trafficking is a crime that often generates the same distinctive evidence from case to case. That's why this police office and many others have a generic list of items to look for in this kind of investigation. There may be some cases in which, because of certain facts uncovered in the investigation, the police will be seeking unusual or highly specific pieces of evidence in

order to tie the defendant to drug trafficking. But in a run-of-the-mine case like Raglin's, where the police have generic, but clear, information about the suspect's trafficking activity, it's difficult to see the difference between a warrant that seeks "evidence related to the illegal use/s[ale]/transfer of illegal narcotics" and a warrant that seeks "evidence of narcotics trafficking, including drugs, cash, weapons, scales, and other drug-trafficking paraphernalia."

Caselaw supports this conclusion. We have said that "evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant," which shows that specification of the underlying offense is the key limit on the scope of the search, not a speculative or boilerplate list. *Wheeler v. City of Lansing*, 660 F.3d 931, 939 (6th Cir. 2011) (quotations omitted). Other courts have come to the same conclusion. Most on point is *United States v. Dickerson*, which held that a warrant that authorized a search for "evidence of the crime of bank robbery," with no itemized list, was sufficiently particular because bank robbery tends to generate the same sort of "distinctive evidence" every time it is committed, even though the officer who applied for the warrant had detailed information about the items used in the robbery. 166 F.3d 667, 693–94 (4th Cir. 1999), *overruled on other grounds*, 530 U.S. 428; *see also United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992).

Relatedly, other circuits have held that specifying that a search is for evidence of a particular crime can bring an otherwise open-ended list of items into compliance with the particularity requirement. *See United States v. Reeves*, 210 F.3d 1041, 1046–47 (9th Cir. 2000) ("[T]he catch-all phrases of which Reeves complains exist in the context of authorization for a search for 'evidence of the possession, manufacture, and delivery of . . . methamphetamine.'"); *United States v. Christie*, 717 F.3d 1156, 1164–66 (10th Cir. 2013) ("[W]arrants may pass the particularity test if they limit their scope . . . to evidence of specific federal crimes."); *see also*

6

*United States v. Rosa*, 626 F.3d 56, 58–59 (2d Cir. 2010) ("[T]he warrant was defective in failing to link the items to be searched and seized to the suspected criminal activity.").

Seeking to fend off this conclusion, Raglin points out that the first page of the search warrant contained a space to describe what the officers were searching for and Officer Duane left it blank. That would be a problem if not for the reality that the warrant incorporated the supporting affidavit. The warrant begins with this prefatory statement: "Proof by Affidavit having been made . . . that there is probable and reasonable cause for the issuance of this Search Warrant as set forth in the Affidavit attached hereto *and made a part hereof as if fully set out herein* . . . ." R. 59-2 at 1 (emphasis added). Because the italicized language "expressly incorporate[s]" the affidavit, we may look to it to satisfy the particularity imperative. *Baranski*, 452 F.3d at 439–40.

Raglin slices things too finely in arguing that the warrant incorporates the affidavit only for probable cause, not for the items to be seized. The language is general—"made a part hereof as if fully set out herein"—and it appears at the beginning of the warrant, before the specific fields that give space to provide an address, name the suspect, and describe the location and the items sought. *See* R. 59-2 at 1. By its own terms, the incorporating language shows that all sections of the warrant should be read with the affidavit.

The key decision on which Raglin relies draws this same distinction. In *United States v. Tracey*, the Third Circuit stated that the "words of incorporation need not be included in the section lacking particularity, as long as the words of incorporation in the warrant make clear that the section is to be read with reference to the affidavit." 597 F.3d 140, 149 n.8 (3d Cir. 2010). The words of incorporation in this warrant do just that.

Last of all, we must reject Raglin's plea to overrule our decision in *Baranski*. That is not for us to do, even less so to an en banc decision. The district court did not err in rejecting Raglin's particularity argument.

For these reasons, we affirm.