# STATE OF CONNECTICUT *v.* HERBERT J. BROWNE III
## (SC 18065)

Rogers, C. J., and Norcott, Katz, Zarella and Schaller, Js.

Argued November 17, 2008—officially released May 26, 2009

*Russell C. Zentner*, senior assistant state's attorney, with whom were *Susan W. Hatfield*, deputy assistant state's attorney, and, on the brief, *Timothy J. Liston*, state's attorney, and *Timothy J. Sugrue*, senior assistant state's attorney, for the appellant (state).

*John R. Donovan*, for the appellee (defendant).

*Conrad Ost Seifert* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

ZARELLA, J. The sole issue in this certified appeal is whether the Appellate Court correctly concluded that the trial court improperly had denied the motion of the defendant, Herbert J. Browne III, to suppress evidence seized pursuant to a search warrant. The state appeals, following our grant of certification,[1] from the judgment of the Appellate Court, which reversed the trial court's judgment and remanded the case with direction to grant the defendant's motion to suppress certain evidence obtained during a search of his residence. *State* v. *Browne*, 104 Conn. App. 314, 321, 933 A.2d 735 (2007). The state makes several arguments on appeal. First, the state argues that the search warrant was valid, notwithstanding any scrivener's errors present on the face of the document. Alternatively, the state argues that any errors in the particularity portion of the warrant can be remedied by employment of the severance doctrine, through which, the state asserts, an otherwise facially

---

[1] We granted the state's petition for certification to appeal, limited to the following issue: "Whether the Appellate Court correctly determined that the trial court improperly denied the defendant's motion to suppress evidence seized pursuant to a search warrant?" *State* v. *Browne*, 285 Conn. 903, 938 A.2d 593 (2007).

deficient warrant may be saved by excising the offending language. The state contends that, once the problems with the warrant are cured by severance, the evidence was legally seized under the plain view doctrine.

The defendant urges us to affirm the judgment of the Appellate Court, asserting that the challenged warrant "authorizes not only a general search but an illegal, general and widespread search unsupported by either probable cause or constitutional authority." The defendant further argues that the warrant cannot be saved by the affidavit's explicit reference to marijuana because the affidavit did not accompany the warrant nor was it incorporated by reference into the warrant. We agree with the state and, therefore, reverse the judgment of the Appellate Court.

The undisputed facts of this case were fully set forth in the Appellate Court's opinion.[2] "On December 23, 2003, a combined application and affidavit for the search and seizure warrant was presented to the Honorable Thomas V. O'Keefe, Jr., a judge of the Superior Court. It is undisputed that the warrant authorized a search for and seizure of illicit drugs. It is also undisputed that the warrant mistakenly referenced the illicit drug cocaine instead of the illicit drug marijuana.

"Specifically, after listing both the narcotic cocaine and various items associated with the sale thereof, the warrant application stated that the aforementioned 'is possessed, controlled, designed or intended for use or which is or has been or may be used as the means of committing the criminal offense of . . . possession of

---

[2] The facts are derived from Judge Gruendel's dissenting opinion because his opinion is more detailed in that regard than the majority opinion. Although the trial court's oral order on the defendant's motion to suppress was brief and recited few facts, the facts presented in this opinion are uncontested and consistent with both the majority opinion of the Appellate Court as well as the warrant affidavit and testimony presented at the June 22, 2005 suppression hearing.

marijuana [in violation of General Statutes § 21a-279 (c) and] possession of marijuana [with intent to sell in violation of General Statutes § 21a-277 (b)],' and '[c]onstitutes evidence of the following offense or that a particular person participated in the commission of the offense of . . . possession of marijuana [in violation of § 21a-279 (c) and] possession of marijuana [with intent to sell in violation of § 21a-277 (b)] . . . .' The accompanying affidavit described, in great detail, two controlled purchases of marijuana from the defendant . . . . The [affiants] concluded that 'it [was their] belief . . . based on their training and experience and knowledge of the crimes of [p]ossession of [m]arijuana . . . and [p]ossession of [m]arijuana [w]ith [i]ntent to [s]ell . . . that probable cause exist[ed] that [m]arijuana [would] be found at 153 Trolley Crossing . . . [in Middletown].' . . .

"The search and seizure warrant contained the following language: 'The foregoing [a]ffidavit and [a]pplication for [s]earch and [s]eizure [w]arrant having been presented to and considered by the undersigned, a [j]udge of the Superior Court, the undersigned (a) is satisfied therefrom that grounds exist for said application, and (b) finds that said affidavit established grounds and probable cause for the undersigned to issue this [s]earch and [s]eizure [w]arrant, such probable cause being the following: From said affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property described in the foregoing affidavit and application is within or upon the person, if any, named or described in the foregoing affidavit and application, or the place or thing, if any, named or described in the foregoing affidavit and application, under the conditions and circumstances set forth in the foregoing affidavit and application, and that, a [s]earch and [s]eizure warrant should issue for said property. Now therefore, by authority of the [s]tate of

Connecticut, I hereby command any [p]olice [o]fficer of a regularly organized police department, any [s]tate [p]oliceman; or any [c]onservation [o]fficer, [s]pecial [c]onservation [o]fficer or [p]atrolman acting pursuant to [General Statutes] § 26-6 to whom these presents shall come within ten days after the date of this warrant to . . .

" '[E]nter into or upon and search the place or thing described in the foregoing affidavit and application, to wit: 153 Trolley Crossing located off of Westlake Road [in] Middletown . . . . [One hundred fifty-three] Trolley Crossing is a multiapartment condo[minium] complex, with the number 153 affixed to the door. Vehicle registered to [the defendant] Connecticut [registration] 567JYF Ford Taurus VIN . . . 1FALP52U1VG142772. . . .

" 'Search the person described in the foregoing affidavit to wit: The person of [the defendant, date of birth, December 12, 1962] for the property described in the foregoing affidavit and application to wit: Cocaine, crack cocaine, cutting agents such as lactose and baking soda, white powder, razor blades, scrapers, straws, packaging materials, foil packets, plastic bags, glassine envelopes, glass or plastic vials, scales, records and other "data" . . . as defined by [General Statutes § 53a-250 (8)] of sale and or purchases of narcotics, currency, rifles, shotguns, semi-automatic weapons, fully automatic weapons, revolvers, ammunition, and other dangerous weapons. Telephone toll records, rent/mortgage records, bank statements, records and account passbooks, receipts showing cash purchases . . . such as electronic equipment including [video cassette recorders], television sets, video cameras, cameras, computers, computer peripherals and storage [devices], gold and silver jewelry which are believed to have been purchased with money derived from the sale of narcotics, financial records and "[d]ata", beepers, fax

machines and telephone answering machines and stored messages contained either on tape or any other electronic format, safety deposit box keys and records relating to same, police scanners, videotapes, and developed photographs showing narcotics and/or other criminal activity.' Judge O'Keefe signed the warrant on December 23, 2003.

"Later that day, the affiants to the warrant application, Detectives Jorge Yepes and Christopher Lavoie of the Middletown police department, accompanied by Sergeant Michael Marino, executed the warrant. They stopped the defendant's vehicle approximately one mile from the defendant's apartment and informed the defendant that they had a search and seizure warrant 'for [him] and the vehicle and his apartment for drugs.' The defendant responded that he 'didn't have anything on him or in his car' and then volunteered that 'there [were] drugs back at [the] apartment.' When [the officers and the defendant] arrived at the apartment, the defendant 'showed [the officers] which key was the key to get into [the] apartment and immediately upon entering the apartment [the defendant] stated that the drugs were in the freezer.' Inside the freezer were two bricks of marijuana, which together weighed seven and one-half pounds. The officers seized the marijuana, along with two scales, multiple plastic bags, proof of residence and $475 in cash.

"Following his arrest, the defendant filed a motion to suppress, alleging, inter alia, that '[t]he property seized [was] not that described in the warrant . . . .' At the suppression hearing, Yepes was asked why the illicit drug marijuana was not 'listed as part and parcel as to the items to be seized.' Yepes testified that '[w]hen I typed up the warrant I made a mistake. I did a cut and copy section of the warrant. . . . I cut and paste from another warrant [with] this section on it and, when I put it in, I forgot to pu[sh] the delete button for the

cocaine and crack cocaine instead of putting the marijuana on it.' On cross-examination, Yepes stated that he reviewed the warrant after its drafting and admitted that 'I just missed it. I made a mistake.' The trial court subsequently denied the motion to suppress." *State* v. *Browne*, supra, 104 Conn. App. 323–30 (*Gruendel, J.*, dissenting). The defendant entered a plea of nolo contendere, conditioned on his right to challenge on appeal the validity of the search warrant. See General Statutes § 54-94a. The court rendered judgment of conviction, sentencing the defendant to forty-two months imprisonment. Additional facts will be set forth as necessary.

The Appellate Court, relying primarily on *Groh* v. *Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004), concluded that the warrant was facially invalid because it failed to satisfy the particularity clause of the fourth amendment to the United States constitution.[3] *State* v. *Browne*, supra, 104 Conn. App. 318. The state challenges this determination, which appears to be premised on two grounds. First, the Appellate Court declared that, "[e]ven if the state is correct that the affidavit and allegations sufficiently describe the items to be seized so as to inform the reader that marijuana, not cocaine, is the object of the search, [in the present case], as in *Groh*, the affidavit did not accompany the warrant." Id., 319. Furthermore, the court rejected the state's argument that "the warrant was valid because the executing officer had personal knowledge of the crime being investigated and knew that marijuana, not cocaine, was the focus of [the] search." Id. The basis for this rejection was the Appellate Court's understanding of the purposes underlying

---

[3] The Appellate Court's opinion focuses entirely on the fourth amendment and does not mention the analogous provision in article first, § 7, of the state constitution. Indeed, the record is devoid of any reference to article first, § 7. Thus, we analyze the claims on appeal solely under the federal constitution.

the fourth amendment's requirement of a warrant: "[T]he purpose of a warrant is not only to limit the executing officer's discretion . . . but to inform the person subject to the search what items the officer may seize. . . . A particular warrant also assures an individual whose property is searched or seized of the lawful authority of the executing officer, [the officer's] need to search, and the limits of his power to search." (Citations omitted; internal quotation marks omitted.) Id., 320.

The Appellate court also found unpersuasive the state's argument that the warrant's erroneous reference to "[c]ocaine" and "crack cocaine" could be severed and that the warrant could be saved by reference to the remaining "collateral items . . . ."[4] Id., 321. The court rejected the state's theory that the marijuana was seized legally under the plain view doctrine,[5] concluding that "the police were not lawfully on the premises of the defendant where the marijuana was found." Id. The court disposed of the state's severance doctrine argu-

[4] The collateral items listed in the warrant included "cutting agents such as lactose and baking soda, white powder, razor blades, scrapers, straws, packaging materials, foil packets, plastic bags, glassine envelopes, glass or plastic vials, scales, records and other 'data' [as defined by § 53a-250 (8)] of sale and or purchases of narcotics, currency, rifles, shotguns, semi-automatic weapons, fully automatic weapons, revolvers, ammunition, and other dangerous weapons. Telephone toll records, rent/mortgage records, bank statements, records and account passbooks, receipts showing cash purchases (such as electronic equipment including [video cassette recorders], television sets, video cameras, cameras, computers, computer peripherals and storage [devices], gold and silver jewelry which are believed to have been purchased with money derived from the sale of narcotics, financial records and '[d]ata', beepers, fax machines and telephone answering machines and stored messages contained either on tape or any other electronic format, safety deposit box keys and records relating to same, police scanners, videotapes, and developed photographs showing narcotics and/or other criminal activity."

[5] Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." (Internal quotation marks omitted.) State v. Brown, 279 Conn. 493, 521, 903 A.2d 169 (2006).

ment in a single sentence: "Moreover, the collateral items, standing alone without the illegal drug, would not support probable cause to believe [that] a crime was committed." Id. The Appellate Court reversed the trial court's judgment and remanded the case with direction to grant the defendant's motion to suppress. Id.

We begin our analysis by setting forth the appropriate standard of review. "Whether a warrant is sufficiently particular to pass constitutional scrutiny presents a question of law that we decide de novo." (Internal quotation marks omitted.) *State* v. *Buddhu*, 264 Conn. 449, 467, 825 A.2d 48 (2003), cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004). "That review is guided by the maxim that '[t]he description of items to be seized in a warrant need only be as specific as the circumstances and the nature of the activity under investigation permit. . . . In construing the terms of a warrant, the circumstances and nature of the activity under investigation dictate a practical margin of flexibility.' " *State* v. *Browne*, supra, 104 Conn. App. 322 (*Gruendel, J.*, dissenting), quoting *State* v. *Montgomery*, 254 Conn. 694, 704, 759 A.2d 995 (2000); see also *State* v. *Chambers*, 88 Wash. App. 640, 643, 945 P.2d 1172 (1997) ("[c]ourts are to evaluate search warrants in a commonsense, practical manner, rather than in a hyper-technical sense").

The particularity clause of the fourth amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. The protections afforded by the particularity clause focus primarily on, and restrict the process of, *issuing* a warrant. See *Baranski* v. *Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 440–41 (6th Cir. 2006) ("[b]y their terms, each of these requirements must be satisfied upon the '[issu-

ance]' of the warrant"), cert. denied, 549 U.S. 1321, 127 S. Ct. 1908, 167 L. Ed. 2d 565 (2007). This focus makes sense in light of the chief purpose of the clause, which is "to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." Id. Chief Judge Richard Posner of the Seventh Circuit Court of Appeals succinctly described the mechanics behind the particularity clause's accomplishment of this objective: "It does this in two steps. The police or other law enforcement officer who is seeking the warrant must submit to the judicial officer a precise description of what is sought to be seized, so that the judicial officer can determine whether a valid law enforcement purpose would be served by the seizure of all items fitting the description. The description is then written into (or attached to or otherwise incorporated in) the warrant in order to make sure that the law enforcement officer who executes the warrant stays within the bounds set by the issuer." *United States* v. *Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999), cert. denied, 528 U.S. 1162, 120 S. Ct. 1177, 145 L. Ed. 2d 1085 (2000); see also *Johnson* v. *United States*, 333 U.S. 10, 13–14, 68 S. Ct. 367, 92 L. Ed. 436 (1948) ("The point of the [f]ourth [a]mendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").

There may be several subsidiary purposes served by the particularity clause in addition to this primary goal. The United States Supreme Court has declared that "the purpose of the particularity requirement is not limited to the prevention of general searches." *Groh* v.

*Ramirez,* supra, 540 U.S. 561. In fact, "[a] particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." (Internal quotation marks omitted.) Id. Although the Appellate Court placed significant emphasis on this aspect of the clause's purpose; see *State* v. *Browne,* supra, 104 Conn. App. 320; more recent pronouncements of the Supreme Court have called into question the continued vitality of this purpose with respect to challenges such as the one before us. In *United States* v. *Grubbs,* 547 U.S. 90, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006), the court seemed to minimize the importance of the purpose expressed in *Groh:* "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches. . . . The [c]onstitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, ex ante, the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police . . . and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages." (Citations omitted; internal quotation marks omitted.) Id., 99. *Groh* itself seemed implicitly to recognize this limitation on the notice rationale when the court declared that "neither the [f]ourth [a]mendment nor [r]ule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search. . . . Quite obviously, in some circumstances—a surreptitious search by means of a wiretap, for example, or the search of empty or abandoned premises—it will be impracticable or imprudent for the officers to show the warrant in advance. . . . Whether

it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present." (Citations omitted.) *Groh* v. *Ramirez*, supra, 562 n.5.[6]

With this background in mind, we proceed to examine the state's claim in more detail. The Appellate Court's opinion accurately described the state's primary claim: "The state argues that the allegations asserted by the affiants in the affidavit and warrant application reflected a consistent and continuous reference to marijuana such that the absence of marijuana from the particularity [portion] of both the warrant and application was merely a scrivener's error." *State* v. *Browne*, supra, 104 Conn. App. 318. The Appellate Court then declared that "[t]his argument was addressed in the recent United States Supreme Court case of *Groh* v. *Ramirez*, [supra, 540 U.S. 551]"; *State* v. *Browne*, supra, 318; and proceeded to explain its view that *Groh* foreclosed the state's argument. See id., 319. We believe that *Groh*, to the extent that it is still valid,[7] is materially distinguish-

---

[6] Moreover, this view is in accord with our statutory law. General Statutes § 54-33c (a) provides in relevant part: "Within forty-eight hours of [a] search [pursuant to a warrant], a copy of the application for the warrant and a copy of all affidavits upon which the warrant is based shall be given to [the owner or occupant of the dwelling, structure, vehicle or place searched, or the person named in the warrant]. . . ."

[7] We note, as Judge Gruendel did in his dissenting opinion, that at least one prominent commentator has questioned the soundness and continued vitality of *Groh*. *State* v. *Browne*, supra, 104 Conn. App. 337 n.5 (*Gruendel, J.*, dissenting). After pointing out several inconsistencies and gaps in the court's reasoning, Professor Wayne LaFave declares: "Because of the many weaknesses in the *Groh* decision, it is to be seriously doubted whether the case was correctly decided. In any event, the ambiguities in the majority's analysis are such that one can only hope the [c]ourt will have occasion to revisit the subject and provide lower courts with more guidance than *Groh* affords." 2 W. LaFave, Search and Seizure (4th Ed. 2004) § 4.6 (a), p. 619.

able from the present case, and, therefore, we turn to a closer examination of that case.

In *Groh,* federal agents had applied for and been issued a warrant to search the respondents' ranch for various illegal weapons and explosives. *Groh* v. *Ramirez,* supra, 540 U.S. 554. "Although the [warrant] application particularly described the place to be searched and the contraband [the agents] expected to find, the warrant itself . . . failed to identify any of the items that [the agents] intended to seize." Id. In fact, "[i]n the portion of the form that called for a description of the 'person or property' to be seized, [the agents] typed a description of [the] respondents' two-story blue house rather than the alleged stockpile of firearms." Id. The warrant application was not attached to the warrant itself, nor was it incorporated by reference in the warrant. Id., 558. No evidence of illegality was uncovered during the course of the search, and no property was seized. Id., 555. The respondents brought an action against the federal agents under *Bivens* v. *Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and 42 U.S.C. § 1983 for, inter alia, violating their rights under the fourth amendment. *Groh* v. *Ramirez,* supra, 555.

Concluding that the warrant was "plainly invalid"; id., 557; the court noted: "[The] warrant did not simply omit a few items from a list of many to be seized, or misdescribe a few of several items. Nor did it make what fairly could be characterized as a mere technical mistake or typographical error. Rather, in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of a 'single dwelling residence . . . blue in color.' In other words, the warrant did not describe the items to be seized *at all.*" (Emphasis in original.) Id., 558. Recognizing that "most [federal Circuit] Courts of Appeals have held that a court may construe a warrant with reference to a

supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant"; id., 557–58; the court nonetheless found it unnecessary to address decisively the validity of this approach because, "the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant." Id., 558.

We find the present case distinguishable from *Groh* in several critical respects. First, it cannot be said that the warrant in this case "did not describe the items to be seized *at all*." (Emphasis in original.) Id. Indeed, *Groh* was "atypical" in that respect. 2 W. LaFave, Search and Seizure (4th Ed. 2004) § 4.6 (a), p. 619 (noting that "*Groh* is an atypical case, quite unlike the usual case of this genre," and concluding that its usefulness is limited to situations in which particularity portion of warrant is completely deficient). To the contrary, the warrant in the present case described the items to be seized in great detail. Furthermore, a cursory review of the warrant application and affidavit makes clear that the reference to "[c]ocaine" and "crack cocaine," rather than marijuana, was, indeed, just the type of "technical mistake or typographical error" that the court in *Groh* implicitly found would not invalidate an otherwise proper warrant. *Groh* v. *Ramirez*, supra, 540 U.S. 558.

Moreover, as Judge Gruendel noted in his dissenting opinion, the warrant in the present case *did* explicitly incorporate by reference the application and accompanying affidavit.[8] *State* v. *Browne*, supra, 104 Conn. App.

___

[8] As Judge Gruendel noted: "The warrant began by directly referencing the warrant application and accompanying affidavit, stating: 'The foregoing [a]ffidavit and [a]pplication for [s]earch and [s]eizure [w]arrant having been presented to and considered by the undersigned, a [j]udge of the Superior Court, the undersigned (a) is satisfied therefrom that grounds exist for said application, and (b) finds that said affidavit established grounds and probable cause for the undersigned to issue this [s]earch and [s]eizure [w]arrant,

335 (*Gruendel, J.,* dissenting). The Appellate Court majority elides this fact when it declares that, "[e]ven if the state is correct that the affidavit and allegations sufficiently describe the items to be seized so as to inform the reader that marijuana, not cocaine, is the object of the search, [in the present case], as in *Groh,* the affidavit did not accompany the warrant."[9] Id., 319. *Groh* is ambiguous, however, on whether the fourth amendment requires an otherwise incorporated warrant application and affidavit to accompany the warrant at the time of execution. Importantly, the warrant at issue in *Groh neither* incorporated any supporting documents by reference, *nor* was it accompanied by any such documents. *Groh* v. *Ramirez,* supra, 540 U.S. 558. Thus, the court was not required to "explore the matter of incorporation" further. Id.; see 2 W. LaFave, supra, § 4.6 (a), p. 616 ("the discussion of whether there was a valid with-warrant search is abruptly ended because there was neither incorporation nor accompani-

such probable cause being the following: From said affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property described in the foregoing affidavit and application is within or upon the person, if any, described in the foregoing affidavit and application, or the place or thing, if any, named or described in the foregoing affidavit and application, under the conditions and circumstances set forth in the foregoing affidavit and application, and that, a [s]earch and [s]eizure warrant should issue for said property.' It further commanded an officer to 'enter into or upon and search the place or thing described in the foregoing affidavit and application,' and to '[s]earch the person described in the foregoing affidavit . . . for the property described in the foregoing affidavit and application . . . .' " *State* v. *Browne,* supra, 104 Conn. App. 335–36 (*Gruendel, J.,* dissenting).

[9] Judge Gruendel noted that the Appellate Court majority failed to identify who the "reader" is that it was referring to, a seemingly important point: "I am unsure whether [the majority] is referring to the neutral and detached judicial officer required under the fourth amendment; see *Johnson* v. *United States,* supra, 333 U.S. 13–14; or to the searchee, in this case, the defendant. If [it is] the latter, that statement is untenable, as the fourth amendment does not require an executing officer to present a copy of the warrant to the property owner before conducting a search." *State* v. *Browne,* supra, 104 Conn. App. 336–37 (*Gruendel, J.,* dissenting).

ment").[10] Although the court in *Groh* acknowledged a split of authority among the federal circuit courts on this issue, it failed to mention any position other than the one requiring both incorporation and accompaniment. See 2 W. LaFave, supra, § 4.6 (a), p. 616; see also *State* v. *Browne*, supra, 339 (*Gruendel, J.*, dissenting) (noting split of authority and citing cases).

In our view, *Groh* left this split of authority unresolved. See *United States* v. *Hurwitz*, 459 F.3d 463, 471 (4th Cir. 2006) ("[The appellant] reads *Groh* as establishing a definitive two-part rule for validating a warrant by incorporation of a separate document. *Groh*, however, establishes no such rule. Instead, *Groh* simply acknowledges the approach generally followed by the [federal circuit] [c]ourts of [a]ppeals. Because neither requirement was satisfied in *Groh*, the Supreme Court declined to further consider the question of incorporation by reference."); *Baranski* v. *Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco & Firearms*, supra, 452 F.3d 444 ("*Groh* did not establish a one-size-fits-all requirement that affidavits must accompany all searches to prevent a lawfully authorized search from becoming a warrantless one"). This view is supported

---

[10] We disagree with the conclusion that Professor LaFave draws from this fact, namely, that "it is clear that the [c]ourt in *Groh* has accepted and adopted the incorporation/accompan[iment] approach, without specifically saying so . . . ." 2 W. LaFave, supra, § 4.6 (a), p. 616. In our view, the most that can be gleaned from *Groh* on this point is that, in a case in which the particularity portion of the warrant is completely deficient, any supporting documents purportedly curing this deficiency must, at a minimum, *either* be incorporated into the warrant by explicit reference *or* accompany the warrant when it is executed. We believe that any further extrapolation from *Groh* on this issue is unsupported supposition. Professor LaFave seems to recognize the open-endedness of the court's position when he notes that there is "doubt . . . as to whether *Groh* is the last word on this issue"; id.; and that "the [c]ourt's own language seems to acknowledge that incorporation plus accompaniment is not inevitably necessary, as the [c]ourt says it is assuming a case in which the contents of the document containing the proper description is not otherwise 'known to the person whose home is being searched.' " Id., p. 617.

by the fact that the court's conclusion in *Groh* was based on the notice function of the particularity clause rather than its main purpose of proscribing general searches; see *United States* v. *Groh*, supra, 540 U.S. 562–63; see also 2 W. LaFave, supra, § 4.6 (a), p. 616; a function recently called into question in this context in *United States* v. *Grubbs*, supra, 547 U.S. 98–99.

In view of the current state of the law on this subject, we believe the correct approach does not require incorporation *and* accompaniment in every situation.[11] For instance, in a case such as this one, when the warrant application and affidavit are placed under seal to protect the identity and safety of a confidential informant, it is, in our view, well within constitutional limits to determine the particularity of the warrant in light of the supporting documentation as long as it is incorporated explicitly by reference.[12]

---

[11] In fact, after the Supreme Court's declaration in *United States* v. *Grubbs,* supra, 547 U.S. 98–99, that the fourth amendment does not require that a property owner or occupant be given a copy of the *warrant* prior to a search, it makes little sense to assume that the court would require accompaniment when such a requirement would have no practical effect and would serve to protect no constitutional interest. The only constitutional purpose that could be served by such a requirement would be to provide notice to uninformed *officers* of the authorized scope of the search so as to avoid a "general, exploratory rummaging in a person's belongings." *Coolidge* v. *New Hampshire,* 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). When, as in the present case, the factual circumstances indicate that the executing officers are clearly aware of the precise scope of the search, this purpose already is satisfied without accompaniment. See *United States* v. *Stefonek,* supra, 179 F.3d 1034 (overly general warrant saved by proper description of items to be seized in unincorporated affidavit because, "[a]mong the agents who executed the search were the very agents who had prepared the application for the warrant, as in *Massachusetts* v. *Sheppard,* 468 U.S. [981, 989 n.6, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984)]; they knew the limited scope of the application; and . . . they did not exceed the limits specified in that application and in the accompanying affidavit").

[12] Despite the defendant's argument to the contrary, it is indisputable that the warrant application and affidavit were incorporated by reference into the warrant in this case. See footnote 8 of this opinion. We need not decide whether accompaniment is required when the relevant documents are not sealed, or under circumstances indicating that the executing officers or the

A further, related distinction between *Groh* and this case is the actual knowledge of the parties involved. The federal agents in *Groh*, as the affiants, were well aware of the contents of the warrant application and the particular items sought, and stated that they orally described the objects of the search to the respondents. The respondents, however, averred that they were given oral notice only that the agents were searching for "an explosive device in a box." (Internal quotation marks omitted.) *United States* v. *Groh*, supra, 540 U.S. 555. Thus, in *Groh*, there was a real question as to whether the targets of the search ever were made aware of the legitimate objects of the agents' search. The court was troubled by this issue because the warrant, and the agents' recitation of its contents, apparently failed to "[assure] the individual whose property [was] searched . . . of the lawful authority of the executing officer, [the officer's] need to search, and the limits of his power to search." (Internal quotation marks omitted.) Id., 561. The court expressed this concern despite its explicit recognition that the fourth amendment does not require an executing officer to present the warrant to the target of the search or owner or occupant of the premises prior to commencing the search. Id., 562 n.5.[13]

In the present case, by contrast, it is clear that both the officers and the defendant were well aware of the items sought under the warrant. First, two of the execut-

person whose property is the subject of the search warrant is unaware of the items sought. We leave the analysis of these issues to future cases in which they are squarely presented.

[13] Professor LaFave has chronicled this inconsistency in his influential treatise. See 2 W. LaFave, supra, § 4.6 (a), p. 618 (noting that, after *Groh*, "it is . . . far from clear exactly what the [f]ourth [a]mendment requirements [regarding the provision of notice to searchees] actually are and what specific function is thereby served"); see also id., § 4.12 (a), pp. 812–14 (after *Groh*, it is unclear whether and under what circumstances fourth amendment requires executing officers to provide copy of warrant to occupant or owner of place to be searched prior to commencing search).

ing officers, Detectives Yepes and Lavoie, were the affiants for the warrant application and knew that the search warrant was based on probable cause to believe that the defendant was in possession of marijuana.[14] Moreover, it is clear that the defendant had no illusions about the objects of the search: "[I]t is undisputed that when the officers first contacted the defendant on December 23, 2003, they informed him that they had a search and seizure warrant 'for [him] and the vehicle and his apartment *for drugs*.' . . . The defendant responded that although he 'didn't have anything on him or in his car . . . there [were] *drugs* back at [the] apartment.' . . . Indeed, upon entering the apartment, the defendant immediately volunteered that '*the drugs* were in the freezer.' . . . Those exchanges . . . indicate that the defendant knew precisely what items the officers intended to seize, namely . . . marijuana." (Emphasis in original.) *State* v. *Browne*, supra, 104 Conn. App. 334 (*Gruendel, J.*, dissenting). "Warrants must be read in a 'commonsense' fashion, see *United States* v. *Ventresca*, 380 U.S. 102, 109, [85 S. Ct. 741], 13 L. Ed. 2d 684 (1965), and we should not adhere to formal requirements of incorporation and attachment whe[n] . . . it is clear that the involved parties were aware of the scope of and limitations on the search." *United States* v. *Bianco*, 998 F.2d 1112, 1117 (2d Cir. 1993), cert. denied, 511 U.S. 1069, 114 S. Ct. 1644, 128 L. Ed. 2d 364 (1994). Unlike in *Groh*, there is no question

---

[14] Detective Yepes testified at the hearing on the motion to suppress as follows:

"[Deputy Assistant State's Attorney]: When you went to the apartment . . . to execute the warrant, did you know what you were looking for?

"[Yepes]: Yes, I did.

"[Deputy Assistant State's Attorney]: And what were you looking for?

"[Yepes]: Looking for marijuana.

"[Deputy Assistant State's Attorney]: How did you know what you were looking for?

"[Yepes]: Because we made control buys from [the defendant]. We bought marijuana from [the defendant]."

in the present case that all of the parties, including the defendant, were aware of the "scope of and limitations on the search." Id.

In rejecting the state's argument in this regard, the Appellate Court majority merely cited to *Groh* for the proposition that "[a] particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, [the officer's] need to search, and the limits of his power to search." (Internal quotation marks omitted.) *State* v. *Browne,* supra, 104 Conn. App. 320. This analysis is incomplete and fails to consider the facts and circumstances of this case. First, the Appellate Court majority failed to recognize the significance of the defendant's clear knowledge regarding the legitimate object of the search. The majority also failed to recognize that the *scope* of a search for cocaine, crack cocaine or any other illicit drug is coterminous with that of a search for marijuana. "[T]he risk of an invasion of constitutionally protected privacy is minimal when there is probable cause to search for a controlled substance. Officers executing a warrant for marijuana [for example] are authorized to inspect virtually every aspect of the premises. . . . If, during their search they discover another illegal substance, the nonspecified substance would be subject to seizure under the plain view doctrine." (Citation omitted.) *State* v. *Chambers,* supra, 88 Wash. App. 645; see also *United States* v. *Stefonek,* supra, 179 F.3d 1034. In other words, this is not a case in which a scrivener's error in the particularity portion of the warrant gave uninformed officers the apparent authority to conduct a more invasive search than was justified legitimately by the magistrate's finding of probable cause.[15] Thus,

---

[15] This is not a case, for example, in which the warrant application and supporting affidavit provided probable cause to search for stolen cars in a warehouse, but the warrant mistakenly authorized a far more intrusive search for illicit drugs.

even in the absence of the officers' subjective knowledge that they were searching for marijuana and not cocaine, the error in the warrant did not serve to expand the officers' authority to conduct a more invasive search than that required to execute the warrant.

The Appellate Court majority also failed to address the impact of *United States* v. *Grubbs*, supra, 547 U.S. 90, on its analysis. In *Grubbs*, the Supreme Court retreated from the "notice" rationale of the particularity requirement, instead, taking the position that "the requirement of [a] particular description does not protect an interest in monitoring searches." (Internal quotation marks omitted.) Id., 99, quoting *United States* v. *Stefonek*, supra, 179 F.3d 1034.[16] This statement undermines the Appellate Court majority's only rationale for rejecting the state's argument. The validity of the warrant must be assessed by examining the integrity of the issuing process as well as the executing officer's knowledge of the underlying facts giving rise to the probable cause supporting the intrusion in the first place and not by reference to whether the target of the search is given appropriate notice of the authorized scope of the search. The individual's constitutional

[16] Interestingly, General Statutes § 54-33d makes it a crime to interfere with the execution of a search warrant: "Any person who forcibly assaults, resists, opposes, impedes, intimidates or interferes with any person authorized to serve or execute search warrants or to make searches and seizures while engaged in the performance of his duties with regard thereto or on account of the performance of such duties, shall be fined not more than one thousand dollars or imprisoned not more than one year or both . . . ." Notably absent from this provision is any exception making it lawful to oppose or interfere with a search based on an invalid warrant, or one that arguably or even obviously exceeds the scope of the warrant authorizing it. This serves to illustrate the principle, expressed clearly in *United States* v. *Grubbs*, supra, 547 U.S. 90, that the fourth amendment does not protect property owners by "giving them license to engage the police in a debate over the basis for the warrant"; id., 99; or "protect an interest in monitoring searches." (Internal quotation marks omitted.) Id. In fact, even engaging in such a debate could subject the property owner or occupant to significant criminal penalties under § 54-33d.

rights are protected "ex ante, [by] the deliberate, impartial judgment of a judicial officer . . . and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages." (Citation omitted; internal quotation marks omitted.) *United States* v. *Grubbs*, supra, 99.

The defendant does not dispute that the issuing judge was presented with sufficient evidence to conclude that probable cause existed to support a search of the defendant's person, vehicle and apartment for evidence of the crime of possession of marijuana with intent to sell.[17] Indeed, the affidavit indicates that the Middletown police had received numerous reports from reliable sources in the months prior to December, 2003, that the defendant had sold marijuana out of his residence. Furthermore, the affidavit that the detectives signed indicates that they employed a confidential informant to conduct two separate controlled marijuana purchases in the days prior to the warrant being issued. "Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories." *State* v. *Barton*, 219 Conn. 529, 545, 594 A.2d 917 (1991); cf. *United States* v. *Burke*, 784 F.2d 1090, 1092–93 (11th Cir.) ("[i]n evaluating the effect of a wrong address on the sufficiency of a warrant . . . [courts should take] into account the knowledge of the officer executing the warrant, even [when] such knowledge was not reflected in the warrant

---

[17] The fact that the affiants alleged in both the warrant application and the supporting affidavit that the defendant had violated the statutes proscribing possession of marijuana and possession of marijuana with intent to sell and the fact that these allegations were set forth in the warrant itself are significant. See *State* v. *Chambers*, supra, 88 Wash. App. 645 (noting that, when warrant indicates specific crime under investigation, discretion of executing officers limited to searching for evidence of crime at issue).

or in the affidavit supporting the warrant"), cert. denied, 476 U.S. 1174, 106 S. Ct. 2901, 90 L. Ed. 2d 987 (1986).[18]

The defendant also appears to accept Detective Yepes' explanation, which he gave under oath at the suppression hearing, that the references to cocaine and crack cocaine in the warrant application and ultimately the warrant were due to a clerical mistake that occurred in the process of "cut[ting] and past[ing]" portions of another warrant to create the one executed in this case. The narrow issue, therefore, is whether this admitted carelessness of the police officers is of sufficient consti-

[18] We are not persuaded by the contrary decision of the Court of Appeals of Washington in *State* v. *Eisele*, 9 Wash. App. 174, 175–76, 511 P.2d 1368 (1973). Presented with a scenario identical in all material respects to the one posed in the present case, the Washington Court of Appeals rejected the argument of the state of Washington that an officer had made a typographical error in the application for the warrant and held that the officer's accidental insertion of "marijuana" instead of "LSD" required suppression of the illicit drugs seized when the warrant was executed. Id., 175. The court declared that, "[i]n executing the warrant . . . the officer exceeded his authority, which authority was limited by the command to search for marijuana. To allow the officer to search for LSD pursuant to a search warrant for marijuana would authorize him to search for an item not described with particularity in the warrant." Id. Although the court conceded that the warrant issued on a showing of probable cause for LSD and suggested that the reference to marijuana was merely an innocent mistake; id., 175, 176; and although a search for LSD would allow the officer to search even the smallest containers, the court directed the trial court to suppress the evidence, citing a need "to rigidly enforce the plain language of [the fourth] amendment." Id., 175–76. We do not subscribe to the court's rigid approach in *Eisele*, nor do we believe that it is in accord with the vast weight of modern authority. Moreover, although *Eisele* has not been explicitly overruled, in our view, the court's approach in that case has been seriously undercut by cases such as *State* v. *Chambers*, supra, 88 Wash. App. 640, and *State* v. *Williams*, 17 Wash. App. 186, 562 P.2d 651 (1977), aff'd, 90 Wash. 2d 245, 580 A.2d 635 (1978), both of which rely on the principle that "[a] grudging and overly technical requirement of elaborate specificity has no place in determining whether a warrant satisfies the [f]ourth [a]mendment requirement of particularity." (Internal quotation marks omitted.) *State* v. *Chambers*, supra, 647; see also *State* v. *Williams*, supra, 189–91 (eschewing rigid approach that court had taken in *Eisele*). We believe these cases are inconsistent with the rigid, dogmatic approach in *Eisele*, thus rendering *Eisele* of little precedential value.

tutional magnitude to invalidate the warrant and require exclusion of the evidence obtained. In our view, for the reasons that we previously discussed, the error in this case was one of form rather than substance; see, e.g., *United States* v. *Hyten*, 5 F.3d 1154, 1156 (8th Cir. 1993) (distinguishing technical errors in warrants, including clerical errors, from those of "constitutional magnitude"); the core protections afforded by the warrant clause of the fourth amendment were left intact and its goals were satisfied. Although we agree with the premise that "[t]he presence of a search warrant serves a high function"; (internal quotation marks omitted) *Groh* v. *Ramirez*, supra, 540 U.S. 557; we also believe that "the actual contents of the warrant are simply manifestations of this protection. . . . [Thus, when] a warrant (due to a mistake) does not specify on its face the particular items to be seized but the warrant application passed on by the magistrate judge contains such details, a searchee still has the benefit of a determination by a neutral magistrate that there is probable cause to search a particular place and to seize particular items." Id., 575–76 (Thomas, J., dissenting).[19]

In the present case, a neutral magistrate determined, on the basis of the sworn oaths of two detectives, that there was probable cause to believe that the defendant was selling marijuana out of his apartment. These executing officers understood what they were searching for and the scope of their authority, the scrivener's error notwithstanding, and they never exceeded the scope of that authority. The defendant also understood exactly what the officers were searching for and, in fact, voluntarily informed the officers of the location of his drug stash. Under these circumstances, we do not see a need to invoke the harsh penalty of the exclu-

---

[19] This aspect of Justice Thomas' dissent in *Groh* is consistent with the United States Supreme Court's more recent position in *Grubbs*. See *United States* v. *Grubbs*, supra, 547 U.S. 98–99.

sionary rule. "[United States Supreme Court] cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury. . . . After all, it is the defendant, and not the constable, who stands trial." (Citations omitted.) *United States* v. *Payner*, 447 U.S. 727, 734, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980).

Even if we were to agree, arguendo, that the typographical error in this case was of constitutional magnitude and therefore tainted the warrant, we are convinced that the warrant can be salvaged through application of the severance doctrine. The severance doctrine allows a court, under certain circumstances, to strike out any constitutionally deficient items in the particularity portion of a warrant and to determine the propriety of the search on the basis of the valid remainder.[20] See generally 2 W. LaFave, supra, § 4.6 (f), pp. 641–45. The leading case establishing this doctrine is *Aday* v. *Superior Court*, 55 Cal. 2d 789, 362 P.2d 47, 13 Cal. Rptr. 415 (1961). In *Aday*, the warrant properly described several obscene books by name but improperly described other items. The California Supreme Court declined to order exclusion of all evidence obtained as a result of the partially defective warrant, establishing the severance doctrine in the process. The court explained: "Although the warrant was defective in the respects noted, it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other articles.

---

[20] The severance doctrine also has been described in terms of what evidence must be suppressed: "Severance means that only those articles seized pursuant to the invalid portions [of the warrant] need be suppressed." (Internal quotation marks omitted.) *United States* v. *Sears*, 411 F.3d 1124, 1129 (9th Cir. 2005), cert. denied, 547 U.S. 1131, 126 S. Ct. 2018, 164 L. Ed. 2d 785 (2006).

The invalid portions of the warrant are severable from the authorization relating to the named books . . . . The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles. . . . In so holding we do not mean to suggest that invalid portions of a warrant will be treated as severable under all circumstances. We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated." (Citations omitted.) Id., 797.

The severance doctrine has been explicitly adopted in every federal circuit and in a large number of states. See, e.g., *United States* v. *George*, 975 F.2d 72, 79 (2d Cir. 1992); *United States* v. *Riggs*, 690 F.2d 298, 300–301 (1st Cir. 1982); *United States* v. *Christine*, 687 F.2d 749, 754 (3d Cir. 1982); *Aday* v. *Superior Court*, supra, 55 Cal. 2d 797; *People* v. *Russell*, 45 Ill. App. 3d 961, 965, 360 N.E.2d 515 (1977); *Commonwealth* v. *Lett*, 393 Mass. 141, 145, 470 N.E.2d 110 (1984); *People* v. *Keller*, 479 Mich. 467, 478–80, 739 N.W.2d 505 (2007); *State* v. *Tucker*, 133 N.H. 204, 210, 575 A.2d 810 (1990); *People* v. *Hansen*, 38 N.Y.2d 17, 21, 339 N.E.2d 873, 377 N.Y.S.2d 461 (1975); *State* v. *Pratt*, 641 A.2d 732, 739 (R.I. 1994); see generally *United States* v. *Sells*, 463 F.3d 1148, 1150–51 n.1 (10th Cir. 2006) (noting that all federal circuit courts of appeals have adopted doctrine and citing supporting cases); 2 W. LaFave, supra, § 4.6 (f), pp. 642–43 n.151 (citing cases). Professor LaFave has commented on the soundness of this doctrine, noting that "it would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invali-

dated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well." 2 W. LaFave, supra, § 4.6 (f), p. 643. Of course, the individual circumstances of each case must be examined to determine whether the challenged evidence was seized during the lawful portion of the search or, conversely, while executing the invalid part of the warrant. See id., pp. 643–44 ("[i]f the items were discovered before those to which the warrant was properly addressed were found and while police were looking in places where the latter objects could be located, then it may be said that the discovery occurred while executing the lawful portion of the warrant").

We note that severance may not be appropriate when the valid portions of the search warrant are insignificant or indistinguishable from the invalid portions of the warrant. Recently, in *People* v. *Keller*, supra, 479 Mich. 467, the Michigan Supreme Court, following the approach of the Tenth Circuit Court of Appeals in *United States* v. *Sells*, supra, 463 F.3d 1148, described a "multiple-step analysis to determine whether severability is applicable." (Internal quotation marks omitted.) *People* v. *Keller*, supra, 478. The court described the steps in the analysis: "First the [c]ourt must divide the warrant into categories. Then, the [c]ourt must evaluate the constitutionality of each category. If only some categories are constitutional, the [c]ourt must determine if the valid categories are distinguishable from the invalid ones and whether the valid categories make up the great part of the warrant." (Internal quotation marks omitted.) Id., 479. In *Keller*, as in this case, there were three categories of evidence sought: (1) the drugs themselves; (2) "distribution evidence, such as currency and packaging paraphernalia"; id.; and (3) "possession evidence, such as proof of residency." Id. The Supreme Court of Michigan determined that the "distribution evidence" category was arguably invalid on the basis

of a lack of probable cause to believe that the defendants were engaged in drug distribution but concluded that this category could be severed from the valid portions of the warrant after evaluating the "the relative scope and invasiveness of the valid and invalid parts of the warrant." (Internal quotation marks omitted.) Id.

In the present case, the arguably invalid category of the warrant was the portion referring to the specific contraband sought, i.e., cocaine and crack cocaine. This category can be severed from the valid portions of the warrant under the *Keller-Sells* analysis. First, although the contraband unquestionably represented an important portion, it cannot be fairly described as "the great part of the warrant." (Internal quotation marks omitted.) Id. In terms of the crimes alleged in the warrant, i.e., possession of marijuana and possession of marijuana with intent to sell, the evidence pertaining to possession and distribution was significant and independently valuable. Furthermore, although severance of the illicit drug portion of the warrant *could have* narrowed the permissible scope of the search, that possibility simply was not relevant under the circumstances of this case. As we have explained, once the executing officers confronted the defendant with the search warrant, he immediately volunteered the location of the marijuana. Thus, the marijuana was not discovered as the result of an overly broad search but, rather, as a result of the defendant's spontaneous cooperation.

Once a portion of the warrant is severed, the state may not rely on that portion to support a search and seizure, as it will be treated as essentially nonexistent. Thus, any evidence seized by executing officers that is not listed in the remaining, valid portions of the warrant must be scrutinized to determine whether any exception to the warrant requirement applies. In this case, the only potentially applicable exception appears to be the plain view doctrine. The Appellate Court majority

in the present case, quoting *State* v. *Cobb*, 251 Conn. 285, 347, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000), described the plain view doctrine as follows: "[O]bjects not named in the warrant, but found within an officer's plain view, may be seized if . . . the officers had a reasonable basis for believing that the seized evidence was reasonably related to the offense which formed the basis for the search warrant. . . . This doctrine is based [on] the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." (Internal quotation marks omitted.) *State* v. *Browne*, supra, 104 Conn. App. 321; see also *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) ("The [plain view] doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only [when] it is immediately apparent to the police that they have evidence before them . . . .").

The Appellate Court majority summarily dismissed the state's severance argument and, by necessity, its plain view argument. First, the majority declared that "the police were not lawfully on the premises of the defendant where the marijuana was found." *State* v. *Browne*, supra, 104 Conn. App. 321. From this conclusion, the majority determined that the plain view doctrine was inapplicable because the state could not satisfy the doctrine's primary requirement that the police have a lawful basis to be in a position to view the items seized. See id. The majority disposed of the

state's severance argument with a single, curious sentence: "[T]he collateral items [enumerated in the warrant], standing alone without the illegal drug, would not support probable cause to believe [that] a crime was committed." Id. In a footnote, the majority justified this statement by characterizing the items found during the course of the search, apart from the nearly eight pounds of marijuana, as "insignificant items . . . that could be found in any home." Id., 321 n.6. Several aspects of the Appellate Court majority's reasoning are troubling.

First, it is axiomatic that probable cause is not determined merely by reference to the warrant's particularity provisions. To the contrary, the issuing magistrate must consider the totality of the evidence presented in the warrant application and supporting affidavits to determine whether there is probable cause to believe that a crime has been committed and that the items sought are likely to be found at the place specified in the warrant. See, e.g., *State* v. *Broell*, 249 Mont. 117, 121, 814 P.2d 44 (1991) ("[t]he existence of a probability of criminal activity is to be determined by an analysis of all the circumstances set forth in the application for [the] search warrant"). Of course, it is true that, without the context and background supplied by the supporting documentation, many of the items listed on the face of a warrant may appear innocuous. It is clearly improper, however, for a reviewing court to divorce these items from that context in its analysis of whether, in hindsight, probable cause existed in a given case. See id., 122 (search warrant read together with warrant application in determining probable cause, particularly when application was submitted by same officer executing warrant). Furthermore, probable cause is not, as the Appellate Court suggests, determined by an ex post facto examination of the ultimate fruits of the search. See, e.g., *United States* v. *Nicholson*, 303 F.2d 330, 332

(6th Cir.) ("[p]robable cause may exist even though in the execution of the warrant nothing is found"), cert. denied, 371 U.S. 823, 83 S. Ct. 43, 9 L. Ed. 2d 63 (1962); *United States* v. *Gotti*, 42 F. Sup. 2d 252, 272 (S.D.N.Y. 1999) ("the existence of probable cause is determined on the strength of what is presented to the judicial officer, [and] its existence does not depend on the fruits of the search").

Moreover, the old rule barring warrants seeking "mere evidence" of criminal activity was discarded by the United States Supreme Court long ago in *Warden* v. *Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967): "Nothing in the language of the [f]ourth [a]mendment supports the distinction between mere evidence and instrumentalities, fruits of crime, or contraband. On its face, the provision assures the right of the people to be secure in their persons, houses, papers, and effects . . . without regard to the use to which any of these things are applied. This right of the people is certainly unrelated to the mere evidence limitation. Privacy is disturbed no more by a search directed to a purely evidentiary object than it is by a search directed to an instrumentality, fruit, or contraband. A magistrate can intervene in both situations, and the requirements of probable cause and specificity can be preserved intact." (Internal quotation marks omitted.) Id., 301–302; see also Fed. R. Crim. P. 41 (c) ("[a] warrant may be issued for any of the following: (1) *evidence of a crime*; (2) contraband, fruits of crime, or other items illegally possessed" [emphasis added]); see also *United States* v. *Beckett,* 321 F.3d 26, 33 (1st Cir. 2003) ("We have long since abandoned the legal distinction between mere evidence and instrumentalities. We now require only that there is reason to believe that the particular evidence to be seized 'will aid in a particular apprehension or conviction.' "). Thus, the Appellate Court majority's implied assertion that the nature of the

items *actually seized* influences the analysis of whether probable cause existed when the warrant issued is clearly misplaced.

In the present case, Detectives Yepes and Lavoie personally witnessed the defendant selling marijuana on two occasions, and attested to that fact in the warrant application. Moreover, they had good cause to believe that the defendant used his apartment as the base of operations for his drug dealing business.[21] Thus, it is clear that probable cause existed to search the defendant's residence not only for drugs but also for evidence of narcotics distribution as well as the common instrumentalities associated with such illicit activities. We are convinced, therefore, that, even with the reference to cocaine and crack cocaine, along with all of the items narrowly applicable only to the dealing of those drugs, stricken, the warrant is still valid as to the instrumentalities and evidence of marijuana dealing, i.e., "packaging materials, foil packets, plastic bags, glassine envelopes . . . scales, records and other 'data' [as defined by § 53a-250 (8)] of sale and or purchases of narcotics, currency, rifles, shotguns, semi-automatic weapons, fully automatic weapons, revolvers, ammunition and other dangerous weapons." We conclude that the officers lawfully detained the defendant and entered his premises on the basis of the warrant.

We further conclude that the police were acting within the scope of the warrant when they searched the defendant's freezer. It is clear that many of the collateral items, sought as evidence of known drug dealing, could be secreted in a container such as the freezer. Yepes testified that drug dealers sometimes store drugs

---

[21] The warrant application and affidavit provided that, on both occasions, when a controlled buy of marijuana was arranged, one of the detectives observed the defendant leaving his apartment soon after the drug order was placed and just before he was observed actually selling the drugs to the confidential informant.

and packaging materials in their freezers. Furthermore, common sense dictates that numerous items listed in the warrant, including cash, records and firearms, could be concealed in a freezer. A search for these items that did not include the defendant's refrigerator and freezer would be far from thorough indeed. Upon opening the freezer, Sergeant Marino, one of the executing officers, testified that he discovered "two large . . . bricks [of marijuana] wrapped in plastic . . . ." He further testified that there was "a very definite odor of marijuana" emanating from the area around the refrigerator and freezer. At this point, it is clear that Marino lawfully seized the marijuana under the plain view doctrine.[22]

For the foregoing reasons, we conclude that the Appellate Court improperly reversed the judgment of the trial court and ordered it to grant the defendant's motion to suppress.

---

[22] We note that, even if the visual appearance of the "bricks" in the freezer did not make their illicit contents readily apparent, the seizure can be justified under the "plain smell" analogue to the plain view doctrine. See, e.g., *United States* v. *Johnston*, 497 F.2d 397, 398 (9th Cir. 1974) (warrantless search of luggage justified when federal drug agent smelled strong odor of marijuana emanating from luggage because defendant had no "reasonable expectation of privacy from drug agents with inquisitive nostrils"); see also *United States* v. *Angelos*, 433 F.3d 738, 747 (10th Cir.), cert. denied, 549 U.S. 1077, 127 S. Ct. 723, 166 L. Ed. 2d 561 (2006); *United States* v. *McCoy*, 200 F.3d 582, 584 (8th Cir. 2000); *United States* v. *Pierre*, 958 F.2d 1304, 1310 (5th Cir.), cert. denied sub nom. *Harris* v. *United States*, 506 U.S. 898, 113 S. Ct. 280, 121 L. Ed. 2d 207 (1992); *United States* v. *Haley*, 669 F.2d 201, 203 (4th Cir.), cert. denied, 457 U.S. 1117, 102 S. Ct. 2928, 73 L. Ed. 2d 1329 (1982); 1 W. LaFave, supra, § 2.2 (a), p. 454. Officers are no more required to ignore clear evidence of illegal activity that is brought to their attention through their sense of smell than that discovered through their sense of sight.

Moreover, we note that the defendant, upon being notified that the police had a warrant to search his apartment for drugs, volunteered that he did indeed have drugs in his apartment, even indicating to the officers the precise location of his marijuana stash in the freezer. Whether the subsequent discovery of marijuana in the freezer is characterized as a plain view seizure, or a search and seizure pursuant to the defendant's explicit consent, it seems clear that the officers were not constitutionally required to ignore the defendant's spontaneous confession.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.